THOMAS J. EVERILL, APPELLANT, *v.* GEORGE SWAN,
CITY AUDITOR, RESPONDENT.

*Policemen—Tenure of Office—Construction of Statutes—Discharge
Without Cause.*

> Appellant was appointed a policeman in Salt Lake City, prior to
> Jan. 1, 1898, under ch. 37, Laws of 1894, and ch. 73, Laws of
> 1896, which laws fixed the tenure of his office to be during
> good behavior, and continued as such policeman until May 25,
> 1898, when he was discharged without cause pursuant to the
> confirmation on the day previous of an appointment by the
> mayor of another in his place. Sec. 2482, R. S., which went
> into effect Jan. 1, 1898, reads, "All persons who, at the time
> when the said repeal shall take effect, shall hold any office un-
> der the statute hereby repealed, shall continue to hold the
> same under the tenure thereof, except those offices which are
> abolished and those as to which a different provision is made
> by the Revised Statutes." *Held,* that appellant's discharge
> without cause was unlawful.

*State Officers—Policemen—Construction of Statutes.*

> Ch. 7, subdv. 2, Laws of 1897, reads, "All appointive officers in
> said cities and towns, shall hold their respective offices until
> their successors shall be appointed and qualified." *Held,* not
> applicable to policemen, who are bound under the laws of the
> State, to perform, independently of the corporation, duties of
> a public nature, and such officers although their appointment
> devolve upon the city, or upon a board created by the legisla-
> ture, as a convenient way to exercise a function of govern-
> ment, are not to be regarded as mere agents of the munici-
> pality, but as public or state officers.

Appeal from the district court, Salt Lake county, Hon.
A. N. Cherry, *Judge.*

Application of plaintiff for a writ of mandamus against
defendant as city auditor of Salt Lake City to compel

him to draw his warrant for salary due the petitioner and his assignors. From a judgment denying the writ, plaintiff appeals. *Reversed.*

*Messrs. Moyle, Zane & Costigan* and *Messrs. Marshall, Royle* and *Hempstead,* for appellant.

The question here presented has already been fully settled by the express language of this court. *Pratt* v. *Swan,* 52 Pac. Rep. 1092.

This court has held that a discretion vested in a city government is not a mere arbitrary discretion, but a discretion exercised for reason and upon cause. *Pehrson* v. *Ephraim,* 14 Utah 147.

It has also held that where discretion exists in a city council to remove a public officer, that does not mean the mere whim of such city council, but a lawful discretion, exercised for cause; that before an officer is removed and his reputation injured, he ought to have a chance to be heard. *People* v. *McAllister,* 10 Utah 357.

The fact that payment was made to some other person than the one entitled is no defense here. *Kendall* v. *Raybould,* 13 Utah 226; *Williams* v. *Clayton,* 6 Utah 86.

See generally upon the whole case: *Williams* v. *Clayton,* 6 Utah 86; *People, etc.* v. *McAllister,* 10 Utah 357; *Gilbert* v. *Board of Police & Fire Com'rs,* 11 Utah 378; *Kendall* v. *Raybould,* 14 Utah 226; *Pehrson* v. *Ephriam City,* 14 Utah 147; *Pratt* v. *Board of Police & Fire Com'rs,* 15 Utah 1; *Heath* v. *Salt Lake City,* 52 Pac. Rep. 602; *Pratt* v. *Swan.* 52 Pac. Rep. 1092.

*W. C. Hall, Esq.,* for respondent.

Upon examination of the case of *Pratt* v. *Swan,* 52 Pac. 1092, it will be observed that this court did not pass upon

the tenure of the office of chief of police, but obviously left that question open and undecided.

The respondent contends that the laws of 1897, and section 215 of the revised statutes of 1898, intended to and did give to the mayor and city council the powers exercised; that is, the right to provide for and to appoint the successors to the appellant and his assignors.

Evidently the legislature intended to do away with the system of police regulations and control by the board of police and fire commissioners, etc., and again place the police department under the control of the mayor and city council of the city.

BARTCH, J.:

This was an application for a writ of mandamus against respondent, city auditor of Salt Lake City, to compel him to draw his warrant on the city treasurer, in favor of the petitioner, for a certain sum of money, which, the petitioner insists, is due him and several others, who have assigned their claims to him, for salaries as policemen of the city. The court refused to issue the writ or grant any relief. Thereupon the petitioner appealed.

It appears that these policemen were appointed to their officers prior to the 1st day of January, 1898, under the acts of 1894, Sess. laws, p. 33, c. 37, and 1896, Sess. laws, p. 219, c. 73, which laws fixed the tenure of their offices to be during good behavior. They qualified and entered upon the discharge of their duties as policemen, and continued to discharge the same until May 25, 1898, when they were discharged from service, pursuant to the confirmation, on the day previous, by the city council, of appointments of other persons in their places, made by the mayor. Thereafter they were not recognized as

policemen, although they have been ready and willing to perform their duties as such. So far as the record shows, these policemen were removed arbitrarily, without cause. There is nothing to show that they were derelict in the performance of their duties, nor that they were incompetent. No charges were preferred, nor any opportunity given them to be heard in their defense. The most important question which arises, under these facts and circumstances, is, was their discharge or removal from office lawful?

Counsel for the appellant contend that, notwithstanding the revised statutes, which took effect January 1, 1898, the policemen of Salt Lake City are entitled to hold their offices during good behavior, as provided in the act of 1894, and its amendment of 1896; that they cannot be removed by the city authorities, except for cause, upon charges preferred, and after having had a hearing thereon, or an opportunity to be heard; that, therefore, the action which resulted in their summary discharge was unlawful; and that they are still entitled to hold their offices, discharge the duties and receive the emoluments thereof. Counsel rely on Sec. 2482, R. S., which reads: "All persons who, at the time when the said repeal shall take effect, shall hold any office under the statutes hereby repealed, shall continue to hold the same under the tenure thereof, except those offices which are abolished and those as to which a different provision is made by the revised statutes."

This section was considered with care in the case of *Pratt* v. *Swan*, 52 Pac. 1092, and that case is decisive of all the material questions raised in this, except the one whether policemen in cities of the class to which Salt Lake City belongs are entitled, under the existing laws, to hold their offices during good behavior, which ques-

tion was not expressly passed upon in that case, because not necessarily involved in the issues, and as to all other material questions raised herein, we refer to that case for our opinion thereon. Respecting the provisions of the statute above quoted, we there said: "This section is, in its terms, general, and applies to all public officers of the state, including the chief of police and other policemen in cities, who, at the time the repeal took effect, held office under the old statutes, except those who held offices which were abolished or for which a different provision was made. In looking over the revised statutes, we are unable to find any different provision respecting the office of chief of police, or such as could be considered in lieu of those concerning the office contained in the re-enactment of 1896. Nor have we been cited to any such different provision. The same may be said of policemen, generally, of the cities of the class to which Salt Lake City belongs."

And, after reviewing the several statutory provisions, respecting the office of chief of police and policemen, it was further observed: "Thus, by diligent examination of the several statutory provisions, to which we have been cited, and of others noticed in our researches, we have been unable to find any which would warrant us in saying that the office in question was abolished.

So we may now say that, after further diligent examination of the several statutory provisions respecting the office of policemen, we have been unable to find any which has changed their tenure of office, as fixed by the acts of 1894 and 1896, and, therefore, the provisions of section 2482, above quoted, that persons therein referred to as holding office "shall continue to hold the same under the tenure thereof," must, in the case of policemen, refer to the tenure of office as fixed by those acts.

Counsel for the respondent, however, cites us to chapter 7, subd. 2, p. 206, Sess. laws, 1897, which reads: "All appointive officers in said cities and towns shall hold their respective offices until their successors shall be appointed and qualified," and seems to insist that this provision has changed the tenure of office of policemen, in cities of the class in question, from that of holding during good behavior, to a tenure at will, and consequently, that policemen may now be removed from office at the mere pleasure of the mayor and city council. The same provision may also be found in the revised statutes, section 888, and although not cited in the Pratt case, still our recollection is that we considered it and were of the opinion that it had no application to the police force, and upon further consideration in this case, we perceive no reason to change our former opinion. Police officers are not mere servants of the municipal corporation. They were appointed under the laws of the state, by a board created for that purpose, to perform public service. While the jurisdiction of such officers is limited by certain boundaries, their service is not alone of local or corporate interest, but is important to the state at large, as well, for the state has an interest in the peace and good order of each of its component parts. The duties which have been imposed upon them by the laws of the state they are bound to perform, independently of the corporation, such duties being of a public nature. The fact that the appointment of such officers was devolved upon the city, or upon a board, by the legislature does not deprive them of the character of public servants. Their appointment was so lodged simply as a convenient way to exercise a function of government. They are not, therefore to be regarded as the mere agents or servants of the municipality, but as public or state officers. This court so held

in *Royce* v. *Salt Lake City*, 15 Utah 401; 2 Dillon on Mun. Corp., sections 974, 975; *Caldwell* v. *The City of Boone*, 51 Ia. 687.

They being such officers, the subdivision in question does not apply to them. It, doubtless, was intended to be applied only to officers who are merely the servants or agents of the municipal corporation. It contains no express words which would make it applicable to policemen in cities of the first class, and we are not inclined to aid the arbitrary power, here contended for, by judicial construction, and hold that it exists by implication. We have no desire to extend that provision of the statute to public officers who do not come clearly within its terms, because it confers a power susceptible of being exercised to the injury of the public service. The power granted, under that subdivision, is in its nature arbitrary and despotic, and is contrary to that principle of natural justice which says that no person shall be condemned unheard or without having had an opportunity to be heard, and that principle courts will never disregard, except under the mandate of positive law. When a public officer is rightfully in office, justice demands that no attack shall be made upon his name and fame, by removal, without an opportunity to be heard in his defense upon charges preferred. *People* v. *McAllister*, 10 Utah 357.

That the views herein expressed, respecting the tenure of office of policemen accord with the intention of the legislature, seems also clear from an examination of the journals of that body for 1897. Referring to the journal of the House of Representatives, p. 460, we find an entry, as follows:

"H. B. No. 133. 'An Act in Relation to Police and Fire Departments of Cities of 12,000 or More Inhabitants, and

Providing for the Support and Control of Departments, and Repealing Chapter 73 of the Laws of Utah, 1896,' was then passed by the following vote: Ayes, 33; noes, 3; absent and not voting, 9." See also p. 303.

So, reference to the Senate Journal, p. 460, shows this entry:

"Report of Committee.

"Committee Room, March 11, 1897.

"Mr. President:—Your Committee on Counties and Municipal Corporations to whom was referred House Substitute for S. B. No. 82, 'An Act in Relation to the Police and Fire Departments of Cities of 12,000 or More Inhabitants, and Providing for the Support and Control of Such Departments, and Repealing Chapter 73 of the Laws of Utah, 1896,' respectfully report that they have had the same under consideration and recommend that the act be passed.

"ROBISON, Chairman.

The report was adopted and the bill filed for first reading. The rules were suspended, the bill read first, second and third times and failed to pass."

Then follows a record of the ballot by which the substitute, H. B. No. 133, for S. B. No. 82, was defeated.

From these entries it may be seen that the bills introduced for the purpose of enacting a fire and police law and to repeal the act of 1896, which is a re-enactment and amendment of the act of 1894, failed to pass.

An examination of the measure which thus failed of passage will show that it provided for complete police and fire departments, and an examination of the Revised Statutes, as shown in the case of *Pratt* v. *Swan, Supra,* reveals the fact that the same legislature, which defeated that measure, made ample provisions in the Revised

Statutes to create and maintain a fire department in cities of more than 12,000 inhabitants and to create and maintain a police department in cities of less size, and in those provisions was included the tenure of office.  Nowhere in the Revised Statutes, however, do we find similar provisions respecting police departments and tenure of office in cities of the first class.  It is therefore fair to assume that it was the intention of the legislature to continue the offices of policemen in the large cities under the tenure as provided in the act of 1896.

We conclude that the petitioner and his assignors, under the existing laws, are entitled to hold their offices until lawfully removed for cause, and that the mayor and city council, having attempted to remove them from office without cause, their action was unlawful and void.  The officers not having been lawfully removed, it was the duty of the respondent to draw his warrant for their salaries upon proper demand therefor, and the court erred in not issuing the writ of mandate to compel him to do so.

The cause must therefore be reversed, with costs, and remanded with directions to the court below to issue the writ.

It is so ordered.

We concur:  ZANE, C. J., and MINER, J.