# Johnson *v.* State of Alabama, *ex rel.* Davis.

*Information in Nature of Quo Warranto, under Code, § 3420.*

(Decided December 18, 1901.)

1. *Quo warranto; right of policeman to hold office triable by.*—The right of a policeman to hold office may properly be inquired into under Sections 3420, 3426 of the Code, which allow proceedings by information in the nature of *quo warranto* "when any person usurps, intrudes into or unlawfully holds or exercises any public office."

2. *Statutes; repeal of by implication; construction of act of Alabama of. December 12th, 1892, (Acts, 1892-3, 177), and act of February 18, 1895, (Acts, 1894-5, p. 1153,) regarding police commissioners of city of Birmingham.*—That part of the act of December 12th, 1892, which requires the police board to conform its action to city ordinances, not being expressly repealed by the later act of February 18, 1895, nor inconsistent therewith, is left in operation.

3. *Same; charter and ordinances of city of Birmingham construed as to qualifications of policemen, and powers of police com-*

*mission.*—An ordinance of the city of Birmingham, adopted in pursuance of charter powers, providing that "all city officers now or hereafter provided for must be residents and qualified electors of the city," and the act of the general assembly of December 12th, 1892, giving the board of police commissioners power to appoint "such policemen as is or may be prescribed by city ordinance," are not repealed by the later act of the general assembly giving such board power to "appoint such police officers as they may from time to time deem necessary," as the ordinance goes no further than to reasonably fix the qualifications of the police force.

4. *Municipal ordinance fixing residence as a qualification for its officers reasonable.*—The ordinance of the city of Birmingham requiring that all officers shall be residents of the city is a reasonable exercise of charter powers.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. A. COLEMAN.

Information in the nature of *quo warranto* under section 3420 of the Code, filed by A. H. Davis in the name of the State against John Johnson to oust him from the office of policeman of the city of Birmingham. The information showed that he was not a resident of the city, and set out the ordinance and acts referred to in the opinion. Demurrers to the information were overruled, and, defendant declining to plead further, the circuit court granted the relief prayed. Defendant appeals.

BOWMAN, HARSH & BEDDOW, for appellant, cited 17 Ency. Pl. & Pr., 386, 400, 461; *Montgomery v. State,* 107 Ala. 380.

WEAVER & LEATHERWOOD, *contra,* cited 3 Brick. Dig., 740; *Fox v. McDonald,* 101 Ala. 51.

SHARPE, J.—Prior to December 12, 1892, the appointment, regulation and control of policemen in the city of Birmingham, was by the chartering acts of that city vested in the board of mayor and aldermen of Birmingham. While that system prevailed, that body, under general powers, conferred by the charter adopted an ordinance which declared "all city officers now or hereafter provided for must be residents and qualified

electors of the city." On the date referred to the general assembly enacted a law to establish for Birmingham a "board of commissioners of police" with power as expressed in the statute "to appoint a chief of police and such other police officers and policemen as is or may be prescribed by city ordinance," and to exercise full direction and control of the officers and members of the police force in conformity to existing laws and ordinances, and such as may be made in future on the subject," and with power also to remove such appointees according to a mode to be prescribed by city ordinances.

On February 18, 1895, another act of the general assembly was approved, which without mentioning the former act, or city ordinances, defined the powers and duties of the board of police commissioners by providing among other things that they shall "have the sole and exclusive power and it shall be their duty to appoint a chief of police, a night captain, and such other police officers and patrolmen as they may from time to time deem necessary for the proper police protection of said city, and shall exercise full and exclusive direction and control of the officers and members of the police force, and shall have the exclusive power to establish and ordain rules and regulations for their government"; and the same act commits to those commissioners the duty of prescribing salaries, and rules for the government and removal of policemen.

By this record, no other ordinance is brought to view whereby the construction of the ordinance here in question can be aided and standing alone the latter seems to include in its requirements officers of the city without exception. Policemen receive their appointment and authority by law. Their duties relate to the maintenance of social order, the administration of public justice and other purely public functions. They are, therefore, officers within the meaning of the ordinance mentioned.

On like considerations the right to hold office as a policeman is subject to be tried under the statute which allows proceedings by information in the nature of *quo warranto* "when any person usurps, intrudes into or unlawfully holds or exercises any public office."—Code,

§§3420, 3426. A precedent for applying such remedy to the case of a policeman is found in *People v. Canty,* 55 Ill. 33.

In *Fox v. McDonald,* 101 Ala. 55, this court said of the first police commissioners' act that its purpose "was to provide an efficient enforcement of the police powers of the city." Such is apparently the controlling purpose of both acts relating to the police board. By them whatever power inhered in the board of mayor and aldermen which was necessary to accomplish this purpose, was transferred from that body to the newly created board, and whatever ordinances contravened that purpose, but none other, were impliedly annulled. Likewise so much of the first act of the legislature as was in conflict with the last was repealed but the repeal of statutes by implication is not favored, and since the later act contains no words expressive of a repeal, it leaves in operation, to the extent there is no such conflict, that part of the act of December 12, 1892, which requires the police board to conform its action to city ordinances.

Control of the police force is a thing apart from fixing the qualifications of its members for appointment, and is not interfered with by an ordinance which goes no further than to reasonably fix such qualifications. That the power of appointment is made exclusive in the police commission implies only that appointments can come from no other source, and not that such right should be wholly unrestricted. The board of mayor and aldermen is the legislative branch of the municipality. Ordinances adopted by it pursuant to charter powers are, within their proper scope and sphere, as forceful and binding as are acts of the legislature itself. The general assembly has not by any act, either expressly or impliedly withdrawn from the board of mayor and aldermen all power to legislate with reference to policemen or that of making reasonable requirements respecting qualifications for the position of policemen. That the ordinance under consideration is reasonable, is not questioned. It has not been repealed or superseded and it operates to disqualify defendant to be a policeman of Birmingham so long as he is not a resident and an elector of that city.

The judgment appealed from will be affirmed.