(123 App. Div. 369.)

## FOX v. SMITH.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. CONSTITUTIONAL LAW—POLICE POWER—LAWS REGULATING PRIVATE DETECTIVES.

Laws 1898, p. 1120, c. 422, § 1, as amended by Laws 1901, p. 1002, c. 362, providing for the regulation and control of private detectives, and requiring them to obtain licenses procurable upon application and inquiry showing the applicant's good character and competency, are within the police power of the state, and are constitutional.

2. LICENSES—STATUTES—CONSTRUCTION—STATUTES LICENSING PRIVATE DETECTIVES.

A person who agreed to act as private detective to watch the movements of a husband and report to the wife, for which he was promised a certain fee, undertook "to engage in the business of a private detective for hire or reward," within Laws 1898, p. 1120, c. 422, § 1, as amended by Laws 1901, p. 1002, c. 362, requiring private detectives to be licensed, though he was not regularly engaged in the business.

Clarke and Ingraham, JJ., dissenting.

Appeal from Appellate Term.

Action by Charles D. Fox against Bessie F. Smith. From a determination of the Appellate Term affirming a judgment of the Municipal Court dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Henry C. Burnstine, for appellant.

Arthur K. Wing, for respondent.

SCOTT, J. Two questions are presented by this appeal. One is as to the constitutionality of section 1, c. 422, p. 1120, Laws 1898, as amended by chapter 362, p. 1002, Laws 1901, quoted at length in the opinion of Mr. Justice CLARKE. That it is within the police power of the state, and therefore constitutional, I entertain no doubt. The evil results which have in innumerable cases followed upon the employment of so-called "private detectives" are well known to every judge, to the members of the bar, and to the community generally. Undoubtedly such agencies must often be employed and undoubtedly many of the persons following the calling are honest and honorable, but it is equally unquestionable that many dishonest and dishonorable persons have undertaken to act as private detectives, and have been quite unable or unwilling to resist the temptation to resort to perjury and blackmail. That persons should be forbidden to follow this calling without an inquiry into their character, and the issuance of licenses by the state, is reasonable, and conducive to good order and the welfare of the community. There would seem to be at least as much justification for a statute requiring private detectives to be licensed, as there is for requiring employment bureaus (People ex rel. Armstrong v. Warden, 183 N. Y. 223, 76 N. E. 11, 2 L. R. A. [N. S.] 859), or plumbers (Schnaier v. Navarre Hotel & Imp. Co., 182 N. Y. 83, 74 N. E. 561, 70 L. R. A. 722, 108 Am. St. Rep. 790), or persons following other lawful pursuits, to take out licenses as a condition of doing business. The second question is whether the appellant came within the provisions of the statute. Concededly he "undertook to engage in the business of a private detective for hire or reward," for the gravamen of his complaint is that he agreed to act as private detective to watch the movements of defendant's husband and report to her, for which he was promised a certain fee for which he now sues. He was thus undertaking to do precisely what the statute forbade him to do unless he had taken out a license. I cannot agree with Mr. Justice CLARKE that a single violation of the statute does not constitute an infraction of it, and, if one does not, I know of no rule by which we may determine how many violations should be deemed to constitute such an infraction. If not one, why any number? Nor do I agree that the statute was aimed only at persons regularly and avowedly engaged in the business of private detective, advertising themselves as such, having an office and conducting an agency or business. To so limit the operation of the act would be to emasculate it and render it easy of evasion by the very persons who most need regulation. Experience, I think, will show that the evil results following upon the practice of private detectives do not as a rule attach to the work undertaken by established and well-known agencies, but to the work of irresponsible persons having no business reputation to endanger, and no established character to lose. In my opinion the necessities of the case require that the act should be most stringently applied to the unattached, irresponsible persons who undertake detective work occasionally, when no easier means of

earning money presents itself. If the statute has any value, it should be applied to such cases. The determination should be affirmed, with costs.

PATTERSON, P. J., and LAUGHLIN, J., concur. CLARKE and INGRAHAM, JJ., dissent.

CLARKE, J. (dissenting). This is an appeal from a determination of the Appellate Term affirming a judgment of the Municipal Court dismissing the plaintiff's complaint for failure of proof, and permitting an appeal to this court. The pleading was oral; the complaint being for money due and the answer being a general denial and demand for a bill of particulars. The bill of particulars alleged:

"That at the instance and request of the defendant, on or about June 3, 1905, the plaintiff entered into an agreement with her, wherein and whereby he agreed to investigate for her the actions of her husband, whom she believed to be unfaithful to her, with a view to discovering whether, in fact, said defendant's husband was unfaithful to her, and, if so, the plaintiff was to procure for the defendant the evidence of such infidelity upon which she could base an action for divorce against her husband, and that for the said services defendant agreed to pay this plaintiff the sum of $500, covering all his fees and disbursements therein; that thereupon defendant entered into his duties under said agreement, and necessarily disbursed therein about the sum of $93, making the investigations and procuring such evidence as aforesaid; that thereafter, and before the plaintiff was fully able to perform under the said agreement, the defendant broke the same, stating that she desired him to perform no other services thereunder, and refused to pay the said $500 or any part thereof, except $20 which she has paid, or to permit him to perform the agreement aforesaid."

The plaintiff testified that he was 29 years of age; that for the nine months preceding the trial—that is from March, 1906—he had been employed as assistant superintendent of the Summerville Iron Works in the cast-iron pipe business; that in 1902 he had worked for eight or nine months in a private detective agency of Mooney & Boland in Chicago; that he had never been employed by any other agency; that after he had finished that employment he remained in Chicago working in the stockyards, and had charge of the business of shipping the horses; that he came to New York in 1903; that he was employed in serving papers for different lawyers; that he was not engaged in any detective business during that time or connected with any agency; that about June 3, 1905, he met the defendant, whom he had known for many years, pursuant to her request through a common friend. She told him that she had been having domestic difficulties, and wanted him to investigate her husband's actions, and note what he did, with a view to her getting a divorce from him if he were unfaithful to her. She offered the plaintiff $500 if he would perform this service, and he accepted the proposition. Of this she promised to pay him at least half immediately after July 1st, and the balance thereof from time to time as plaintiff needed it to pay expenses. Pursuant to this arrangement plaintiff immediately began performance upon his part, hired a man, expended $20 advanced by the defendant, together with 90 odd dollars for which she had not reimbursed him, and devoted considerable time to it personally up to July, 1905, when de-

fendant broke the contract by refusing to pay him according to her agreement or permitting him to proceed further in the performance of his part thereof, and by endeavoring to compel him to enter into a new contract upon different terms, which he refused to do. The defendant thereupon moved to dismiss the complaint upon the ground that the plaintiff had failed to comply with the statute in relation to private detectives. The court granted the motion, and dismissed the complaint, and from the judgment entered thereon the plaintiff appeals.

Section 1, c. 422, p. 1120, Laws 1898, as amended by chapter 362, p. 1002, Laws 1901, provided that:

"No person * * * shall engage in the business of private detective for hire or award, or advertise such business to be that of detective or as conducting a detective agency, without having first obtained a license so to do as hereinafter provided, from the Comptroller of the state of New York; and no person * * * shall engage in the business for hire and reward of furnishing or supplying information as to the personal character of any person * * * or as to the character of kind of business and occupation of any person * * * or own or conduct a bureau or agency for the above mentioned purposes * * * without having first obtained a license so to do as hereinafter provided. * * * "

Section 2 provides that:

"Any person intending to conduct the business of detective or detective agency, and any person intending to conduct the business of furnishing or supplying information as to the personal character of any person or firm or as to the character or kind of business and occupation of any person * * * or own or manage a bureau or agency for the above mentioned purposes * * * shall present to the Comptroller of the state, and file in his office a written application duly signed and verified by such person, and approved by not less than five reputable citizens, freeholders of the county, where such applicant resides, or where it is proposed to conduct such business * * * such application shall state the age, residence, present and previous occupation of such applicant, and the name of the city, town or village where the principal place of business is to be located, and such further facts as will tend to show the good character, competency and integrity of such applicant. The Comptroller when satisfied from an examination of such application, and such further inquiry and investigation as he shall deem proper, of the good character, competency and integrity of such applicant, shall issue and deliver to such applicant a license to conduct such business upon the applicant's paying to the comptroller for the use of the state, a license fee of $100 and upon his executing, delivering and filing in the office of said Comptroller a bond to be executed by such applicant with one or more sureties in the sum of $2,000, conditioned for the faithful and honest conduct of such business by such applicant. * * * "

Section 5 of said act, as amended by chapter 318, p. 696, Laws 1899, provides that:

"Any person violating any of the provisions of the act shall be deemed guilty of a misdemeanor."

The respondent claims that the plaintiff came within the purview of said statutory provision, and that, as he did not prove that he had received a license from the State Comptroller and had given the bond required, the acts done by him in making the contract and the work performed thereunder, which constitute the basis of this suit, made him guilty of a misdemeanor, and that the court will not support a recovery based upon an illegal contract to recover for services which it is a crime to perform. The appellant urges the unconstitutionality of the

statute relied upon for the maintenance of this judgment. We do not deem it necessary to consider that question in this case, because, as we view it, the statute does not apply to the facts in the case at bar. What the statute was aimed at was regulation and control of those conducting the business of private detectives. It is clear from the language of the statute that such was the object. "No person or corporation shall engage in the business of private detective for hire or reward, or advertise such business * * * or shall engage in the business * * * or own or conduct a bureau or agency" are the repeated phrases of the first section. So in the second section—"Any person intending to conduct the business of detective agency and any person intending to conduct the business of furnishing or supplying information * * * or own or manage a bureau or agency for the above mentioned purposes * * * or where it is proposed to conduct such business, * * * where the principal place of business is to be located, * * * the Comptroller shall issue and deliver to such applicant a license to conduct such business"—repeat again and again the intention of dealing with a regular business. So, in section 3:

"In case two or more persons composing or pretending to compose a partnership, wish to carry on such business."

There was at the time of this legislation a well-recognized and long-established business conducted by so-called bureaus or agencies for hire and reward by private persons for private purposes of investigation, known generally as "private detectives." Certain evils and abuses growing out of the employment of such persons, particularly in matrimonial litigation, had from time to time attracted the attention of the public, and evidence from such sources had frequently received unfavorable comment from the courts. Properly conducted by responsible persons, much of the investigation conducted by such agencies was legitimate and necessary, and therefore it was that the Legislature undertook to regulate and control this business in the public interests. There was no attempt made in the statute to forbid investigation or to deny the right of an individual to investigate for himself, and the language, we are persuaded, was carefully confined to controlling a regular business, and did not attempt to touch an occasional employment of an individual in a specific instance. We do not think such was the purpose or intent of the Legislature, and, if such was its purpose or intent, there would be grave grounds to doubt its authority to so provide. The phrase, "engaging in business," has been construed by the Court of Appeals in Penn Collieries Co. v. McKeever, 183 N. Y. 93, 75 N. E. 935, 2 L. R. A. (N. S.) 127. In that case a foreign corporation sued for the price of a cargo of coal which it had sold and delivered to the defendant in the city of New York. The defense was that, as the plaintiff was doing business in this state without having procured from the Secretary of State the certificate required by section 15 of the general corporation law (Laws 1892, p. 1805, c. 687), it could not maintain any action upon its contracts. Judge Gray said:

"To bring into operation the statutory provisions, the facts should show more than a solitary, if not accidental, transaction as was the one before us. They should establish that the corporation was conducting a continuous business. To be 'doing business in this state' implies corporate continuity of con-

·duct in that respect, such as might be evidenced by the investment of capital here, with the maintenance of an office for the transaction of its business, and those incidental circumstances which attest the corporate intent to avail' it-·self of the privilege to carry on business. In short, it should appear, as it was intimated in the opinion in People ex rel. Armstrong v. Barker, 157 N. Y. 159, 51 N. E. 1043, that the corporation and its officers intended to establish a continuous business in the city of New York, and not one of a temporary char-·acter."

In City of Watertown v. Rodenbaugh, 112 App. Div. 723, 98 N. Y. Supp. 885, the ordinance, for the violation of which the defendant ·was convicted, provided that no person shall engage in the business ·of bill posting, bill distributing, sign advertising of any kind, or in distributing sample packages of merchandise, or in any other like ·method of advertising, without a license so to do granted by the com-·mon council. The court said:

"The ordinance assumes to prevent any unlicensed person from engaging in ·the business referred to, and it may well be questioned whether a person who, .upon one occasion only, distributed sample packages under circumstances here ·disclosed, can be said to be engaged in the .business within the meaning of this ·ordinance."

While the plaintiff in this instance was undoubtedly engaged in de-·tective work and undoubtedly the contract upon which he sued contem-.plated such work, there is no evidence in the case which showed that at any time in the city of New York he had been engaged in the busi-·ness of private detective, or had advertised such business. He had ·no office. He conducted no ·agency or bureau. He was employed ·upon this one occasion to do this one piece of work. The law did not ·prohibit the doing of the .work, nor did it require the taking out of a ·license and the giving of a .bond under such circumstances.

As the case was disposed of solely upon the ground that a recovery ·was impossible by reason of the statutory provisions hereinbefore considered, it follows that the determination of the Appellate Term and ·the judgment of the Municipal Court should be reversed and a new ·trial granted, with ·costs to the appellant to abide the .event.

INGRAHAM, J., concurs.