## STATE by BARNES, Atty. Gen., ex Inf. KORNS v. SHORES.

### No. 2919.   Decided May 6, 1916.   (157 Pac. 225.)

1. MUNICIPAL CORPORATIONS—POLICEMAN—"OFFICER." A policeman is an "officer" within Comp. Laws 1907, Section 221, declaring that no person shall be eligible to any office who is not a qualified elector of the city. (Page 77.)

2. QUO WARRANTO—FUNCTION OF WRIT—TITLE TO OFFICE—"OFFICER." A policeman is an "officer," and his title to office may be tried by quo warranto. (Page 77.)

3. MUNICIPAL CORPORATIONS—POLICEMAN—STATUTE—REPEAL—"ELIGIBLE"—"QUALIFICATION." Comp. Laws 1907, Section 221, which has been in existence for over twenty years, declares that no person shall be eligible to any office who is not a qualified elector of the city. Laws 1899, c. 28, relating to police and fire departments, abolished the board of control of the police departments in cities of over 12,000 inhabitants, and again gave the city council full power to appoint heads of departments and all other members, section 10 declaring that the city council shall have power by ordinance to prescribe and define the qualifications and duties of the officers and employees of the police and fire departments. Such law contained a general repealing clause of all acts in conflict therewith, and was obviously directed at Laws 1896, c. 73, which had created special boards of police and fire commissioners. Held that, as implied repeals are not favored, and as the word "eligible" means capable of being elected or chosen, while the word "qualification" refers to the fitness of a person for a particular pursuit, Comp. Laws, Section 221, was

not impliedly repealed by Laws 1899, c. 28, Section 10, and so the
city council cannot appoint as a policeman one who was not a
qualified elector of the city.   (Page 78.)

Original proceedings by the State of Utah, by Albert R.
Barnes, as Attorney General, upon the information and com-
plaint of William H. Korns, against C. W. Shores.

Judgment of ouster against respondent.

*Wm. E. Rydalch,* and *James H. Ball,* for plaintiff.

*H. J. Dinninny, City Atty.,* and *W. H. Folland, Asst. City
Atty.,* for defendant.

STRAUP, C. J.

This is a *quo warranto* proceeding to determine the defend-
ant's right to hold the office of chief of police of Salt Lake
City.   He was appointed to that office by the board of com-
missioners of Salt Lake City, and entered upon the discharge
of duties thereof on the 17th of January, 1916.   Thereafter
these proceedings were instituted to oust him on the alleged
ground that he was not a qualified elector of the city.   The
allegation that he was not such an elector is not denied by
him.   By the plaintiff it is affirmed, and by the defendant de-
nied, that such qualification was essential to his right to hold
the office.

Compiled Laws of Utah 1907, under the title "Cities and
Towns," and the chapter "Officers—Duties and Powers"
(section 221), provide that "no person shall be eligible
to any office who is not a qualified elector of the city."   **1, 2**
It is generally recognized that a policeman is a public
officer (5 McQuillin, Municipal Corporations, Section 2417;
*Pratt* v. *Swan,* 16 Utah 483, 52 Pac. 1092; *Everill* v. *Swan,*
17 Utah 514, 55 Pac. 68) ; that a member of the police force
holds an office (*State ex rel.* v. *Kennedy,* 69 Conn. 220, 37 Atl.
503) ; that "policemen are officers within the meaning of an
ordinance declaring that 'all city officers must be residents
and qualified electors of the city' " (*Johnson* v. *State,* 129
Ala. 672, 30 South. 907; *Id.,* 132 Ala. 43, 31 South. 493) ; that
such enactments embrace the office of chief of police (*Foard* v.

·*Hall*, 111 N. C. 369, 16 S. E. 420), and that the title to it may be tried by *quo warranto* (*Johnson* v. *State; Foard* v. *Hall*). If, therefore, section 221 is in force, then it is quite clear that to be eligible to the office the defendant at the time of his appointment had to be a qualified elector of the city. This, though not wholly conceded, yet is but faintly disputed.

The defendant, however, contends that that section, so far as it may be said to relate to or embrace the office of chief of police or of policemen, was repealed by chapter 28, Laws of 1899, relating to police and fire departments. Section 221 for more than thirty years has been a part of a statute relating to eligibility, powers, duties, election, appointments, terms, removal, oaths, bonds, compensation, etc., of officers of cities, and in 1907, eight years after the Laws of 1899, was with them and other laws then in force compiled, annotated and published by authority of an act of the Legislature. That it has been in full force, and applies to or includes police officers, has not been questioned until now. Prior to 1894 the management and control of police and fire departments and the appointment of heads and members thereof were for many years conferred on the city council. In that year, and by re-enactments in 1896, a special board of police and fire commissioners was created, on whom was conferred the exclusive management and control of such departments of cities of 12,000 or more inhabitants, including the appointment of heads and members thereof. It gave the board power to adopt rules and regulations respecting the selection and appointment of such members and the ascertainment of their "physical and mental qualifications, habits, reputation, standing, and experience," and providing "for a competitive examination to best ascertain and determine their qualifications." Notwithstanding such statutes giving the board power thus to pass on and determine the qualifications of members of such departments, it nevertheless is not claimed, nor has it ever been contended, that section 221 was in any particular affected thereby. In 1899 this board was abolished, and the control and management of police departments of cities of 12,000 or more inhabitants again placed in the city council, with full power to appoint heads of the de-

partments and all other members thereof and to direct and supervise them. It then, among other things (section 10, Laws of 1899), was provided that "the city council shall have the power by ordinance to prescribe and define the qualifications and duties of the officers and employees of said departments" —police and fire departments. Such laws contain a general repealing clause that "all acts and parts of acts in conflict herewith are hereby repealed," especially chapter 73, Laws of 1896, which had created the special board of police and fire commissioners prescribing its powers and duties and giving it the exclusive control and management of police departments and the appointment of officers and employees thereof, and by rules and regulations defining and determining their qualifications.

The contention made is that these laws (1899) were intended to be a complete re-enactment with respect to police and fire departments, and, since they conferred express power on the city council (all of which the present board of city commissioners possess) by ordinance to prescribe and define the qualifications and duties of officers and employees, section 221 was, either expressly or by necessary implication, repealed, so far as it may be said to embrace the office of chief of police or of policemen. There is some force to the contention; but we think the contrary view more tenable. Section 221 was not expressly repealed or amended. No reference whatever is made to that section in the repealing clause of, or otherwise by, the Laws of 1899. Repeals by implication are not favored. A later act will only be held to repeal by implication a former when the two are in irreconcilable conflict. There is no such repugnancy between section 221 and section 10 of the Laws of 1899. They are found in different statutes, and, as is seen, relate to different subjects and have different objects; section 221 to eligibility to hold an office of the city, requiring a person, to be eligible, to be a qualified elector of the city; the Laws of 1899 to a wholly different subject and having a wholly different object—the management, regulation, and control of police and fire departments and the appointment of heads and members thereof, and prescribing and defining their qualifications. In other words, the act of

1899 but took from the special board all power and duties conferred on it by the laws of 1894 and 1896, and again vested them in and reconferred them on the city council, thereby restoring to it all the powers and duties in such respect taken from it by the acts of 1894 and 1896. It never was contended, and it is not now contended, that the city council, prior to 1894 (Laws 1894, c. 37), could legally have appointed one chief of police who was not a qualified elector of the city. And, since the act of 1899 but restored to the council what it possessed prior to and what was taken from it by the acts of 1894 and 1896, it is not probable that the Legislature intended to repeal section 221, which theretofore in no particular had been affected or even involved, and to grant power to appoint a chief who was not a qualified elector. There is a clear distinction between "eligible," as used in section 221, and "qualifications," as used in the Laws of 1899. The former means capable of being legally chosen, and relates to the legal capacity of being appointed, elected, or chosen, as well as holding (3 Words and Phrases and 2 Words and Phrases, Second Series) ; the latter, fitness of the person for the particular pursuit or performance of duties of the office or position to which he is chosen (7 Words and Phrases). This is pointed out in *State* v. *Bemenderfer,* 96 Ind. 376, and *Bradley* v. *Clark,* 133 Cal. 196, 65 Pac. 395, where it is said that "eligible" means capable of being chosen, while "qualify" means the performance of the acts which the person chosen is required to perform before he can enter into office, as to take oath, give a bond, etc., and (*Cummings* v. *Missouri,* 71 U. S. 277, 18 L. Ed. 356, and Words and Phrases) relates also to fitness, competency, skill, endowments, etc., for the performance of the duties in respect of the office or position. Such distinction is also made by lexicographers. The words themselves and their derivations imply it. Eligere; choose, elect. Qualis; of what kind. "Eligible," as used in section 221, manifestly is used in the same sense as that term is used in other statutes relating to county officers wherein it is provided that "no person is eligible to a county, district, or precinct office, who at the time of his election is not an elector of the county, district, or precinct in which the duties of office

are to be exercised," and as used in constitutional provisions that "no person shall be eligible to" any of the there enumerated offices unless he be, at the time of his election, a qualified elector and a resident of the state for five years. "Qualifications," as used in section 10, Laws of 1899, is used in the same sense as that term was used in the Laws of 1894 and 1896—fitness, competency, experience, habit, etc.

So regarding the statutes, they are not repugnant, and thus the one does not repeal the other. From this it follows that section 221 is applicable, and hence that the defendant, to be legally chosen or appointed to the office of chief of police, was required to be a qualified elector of the city. He confessedly, possessed no such legal qualification, and hence unlawfully intruded into, and cannot lawfully hold, the office. Therefore it is considered and adjudged that the defendant be ousted and altogether excluded therefrom, and that the relator have and recover his taxable costs. Such is the order.

FRICK and McCARTY, JJ., Concur.