[No. 28738. Department One. July 25, 1942.]

FRED H. SURRY, *Respondent*, v. THE CITY OF SEATTLE et al., *Appellants*.[1]

*A. C. Van Soelen* and *John A. Homer,* for appellants.

*Edgar S. Hadley* and *Ralph Hammer,* for respondent.

MILLARD, J.—Trial of action instituted by plaintiff to enjoin enforcement of Seattle city ordinance No. 70933 on the ground of its invalidity, resulted in entry of a decree permanently restraining the city of Seattle from enforcing the ordinance. The defendants (city of Seattle and the city comptroller in charge of the Seattle city license department) appealed.

[1]Reported in 128 P. (2d) 322.

Seattle ordinance No. 66591, passed by the Seattle council in 1936, provides for the appointment by the chief of police of as many special policemen as he shall deem necessary, and who shall serve in such office without compensation from the city: Provided, that the number of special policemen acting pursuant to such appointment shall not at any time exceed three hundred. Under this ordinance, to be eligible for appointment as a special policeman, the person must be a citizen of the United States, a resident of the city of Seattle, trustworthy, and of good moral character, and who has not, within ten years prior to the date of his application for appointment, been convicted of a felony or any offense involving moral turpitude. Such special policemen are not considered as employees of the city of Seattle for any purpose.

The applicant for appointment as a special policeman is required to file with the civil service commission an application like those required by the civil service commission of applicants for the position of police patrolman. He shall in such application give the information required, which application shall be accompanied by the statements of at least three reputable citizens, attesting the trustworthiness and good moral character of the applicant, who shall make an imprint of the thumbs and fingers of both hands. If the civil service commission determines, after investigation, that the applicant is eligible to appointment as special policeman, it shall so certify to the chief of police; otherwise, it shall disapprove the application.

Upon receipt of the certificate from the civil service commission as provided in the foregoing provision, and upon presentation of a receipt showing payment to the city treasurer of $2.50, and upon payment by the applicant to the chief of police of five dollars as a deposit to be held until return of a metal badge bearing the words "Special Police, City of Seattle" with a

number to be assigned by the chief of police, the chief of police may, in his discretion, appoint the applicant as a special policeman. At the time of appointment, the metal badge described shall be delivered to the appointee. All deposits for badges are held in a trust fund from the proceeds of which special policeman badges are purchased as needed and from which fund, whenever a badge is returned to the chief of police in good condition, the appointee is repaid the sum of five dollars.

Ordinance No. 70933, effective July 12, 1941, amends the license code (ordinance No. 48022) by adding three new sections. This ordinance defines a "merchant patrolman" as a person who, for hire or reward, as a business and as an independent contractor, guards or protects persons or other persons' property, or patrols streets, districts, or territory for such purposes, and includes any person who is employed as a guard or patrolman for any such person.

Under this ordinance it is unlawful for any person, firm, or corporation to be or become a merchant patrolman without being the holder of a license, issued under the provisions of this ordinance, to be designated as "merchant patrolman's license." The fee for the license is five dollars per annum. All licenses expire June 30th of the calendar year of issue. No person, firm, or corporation who holds a merchant patrolman's license shall be required to hold a "detective agency license" or a "private detective license" in order to engage in the same business as a merchant patrolman.

Under § 262 of the amended ordinance No. 70933, it is provided that applications for merchant patrolman's license shall be accompanied by a receipt showing the payment of the required fee to the city treasurer on forms to be furnished by the comptroller for that purpose. The application shall be signed and verified by the applicant (or, in case of a corporation, shall be

signed by a duly authorized officer of the corporation and shall give the local address and place of business of the corporation); shall state the applicant's full name, age, and residence, present and previous occupations, and, if an employee, the address of the place of business and the name of his employer. The city comptroller, before acting upon the application, shall request the chief of police to investigate the truth of the statements contained in the application, and, following his report thereon to the comptroller, the latter, if satisfied that the applicant has the requisite qualifications, shall issue the license for which application is made. The ordinance further provides that no "merchant patrolman's license" shall be issued or remain effective for any person who is not a special police officer of the city of Seattle.

Respondent, at the time of the commencement of this action had been engaged in the merchant patrol business for thirty years. In this business respondent supplied individual patrolmen to banks, warehouses, and business places in Seattle. Those patrolmen wore blue serge uniforms and a cap, made regular rounds and visits to the places under their protection, carried firearms, and had keys to the places and entered upon premises and into the buildings under their protection.

It is the position of the respondent that ordinance No. 70933 is invalid because of the requirement that a merchant patrolman should first be a special policeman. The validity of the ordinance is also challenged because it restricts appointment of special police officers to residents of the city, whereas the operation of respondent's business goes beyond the corporate limits of Seattle. A further objection to the ordinance is that the requirement for fingerprinting involves a delay of six months or more in obtaining a report on

fingerprints from the Federal government before a commission as a special policeman could be issued.

The question is whether the ordinance licensing merchant policemen is invalid because it requires applicants to be special policemen under an ordinance restricting appointment to residents of the city of Seattle and requiring the fingerprinting of applicants.

■ Respondent is not in a position to complain of appellants' method of administration, as he has not shown that he has been in any manner unreasonably and unlawfully restricted in conduct of his business. In *Milwaukee v. Rissling,* 184 Wis. 517, 199 N. W. 61, in sustaining an ordinance requiring licenses for electrical contractors, the license to be issued only to those possessing specified qualifications and after examination by a committee, the supreme court of Wisconsin said:

"The validity of the ordinance, in so far as it prescribes qualifications for entering upon the business of a contractor, is not properly before us. The defendant, not having applied for a license, cannot raise that question."

In *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560, the plaintiff questioned the legality of the provision of the state liquor law vesting certain powers in the liquor control board. We said:

"Before the appellant can raise this question, he must show a threatened wrong to himself or an invasion of some legal right, and some interest in preventing a wrong sought to be perpetrated. Before a law can be attacked by any citizen on the ground of unconstitutionality, he must show that its enforcement is an infringement on his rights of person or property."

In *Lehon v. Atlanta,* 242 U. S. 53, 61 L. Ed. 145, 37 S. Ct. 70, the supreme court of the United States sustained an ordinance requiring a license and bond and

approval by the chief of police to carry on the business of a private detective. The court said:

"But the ruling of the local officers in refusing approval of applications of nonresidents of Georgia is urged as a construction of the ordinances or laws of the State and, it is contended, makes them discriminatory against citizens of other States. Plaintiff in error, however, admits he made no effort to comply with the ordinances. The Court of Appeals, therefore, was of opinion that, whether certain sections of the Penal Code of the State did or did not exclude citizens of other States from engaging as private detectives, plaintiff in error was deprived of no constitutional right, for 'as to him, the ordinances were never construed at all.' In other words, that he had not asserted a right, and in the absence of assertion could not have it judicially passed on. We concur in the ruling. It is within the principle of *Gundling v. Chicago,* 177 U. S. 183. To complain of a ruling one must be made the victim of it."

In *Gundling v. Chicago,* 177 U. S. 183, 44 L. Ed. 725, 20 S. Ct. 633, an ordinance of the city of Chicago, respecting the issue of a license to persons to sell cigarettes upon payment of one hundred dollars and forbidding their sale without license, was sustained. In the course of its opinion, the United States supreme court said:

"It seems somewhat doubtful whether the plaintiff in error is in a position to raise the question of the invalidity of the ordinance because of the alleged arbitrary power of the mayor to grant or refuse it. He made no application for a license, and of course the mayor has not refused it. *Non constat,* that he would have refused it if application had been made by the plaintiff in error. Whether the discretion of the mayor is arbitrary or not would seem to be unimportant to the plaintiff in error so long as he made no application for the exercise of that discretion in his favor and was not refused a license."

It is clear, as contended by counsel for ap-

pellants, that the functions exercised by a merchant patrolman are very similar to those of a regular policeman. He has a regular route to patrol and makes regular trips of inspection to certain premises and buildings. On his rounds, he keeps a lookout for suspicious characters and for indications of crimes or plans for crimes in connection with the premises and the buildings he patrols. He has keys which admit him to buildings under his protection, which buildings include banks, warehouses, and other buildings containing valuable property. The proper policing of a city is a primary duty which a city owes to its citizens.

"It would be very common-place to say that the exercise of police is one of the necessary activities of government and all that pertains to it may be subjected to regulation and surveillance as a precaution against perversion. The Atlanta ordinances do no more. They provide in effect that all who engage in it or are connected with it as a business shall have the sanction of the State, have the stamp of the State as to fitness and character, take an oath to the State for faithful execution of its duties and give a bond for their sanction. This the State may do against its own citizens and may do against a citizen of Louisiana, which plaintiff in error is, or against a citizen of any other State." *Lehon v. Atlanta, supra.*

That the city may supplement the police protection it provides by authorizing private persons to perform some of its police functions to insure greater safety of persons and property, needs no citation of sustaining authority. It follows that, if private persons are to engage in police work, the city may, under its police power, in order to insure that those who engage in police work shall be honest and trustworthy, require of the private persons engaged in such work a regulatory license fee and impose upon them regulations and requirements the same as those required of its regular policemen. The city requires that its regular

policemen be fingerprinted in making application for appointment, and the city may require the same of a private person who wishes to engage in like work. The legality of this requirement is beyond question.

The method followed of clearing the fingerprints through the Federal bureau of investigation is an almost perfect, and without question a reasonable, method for discovering a past criminal record. Such system enables the city to prevent a criminal with a record from becoming a merchant patrolman and will prevent the criminal from obtaining a police badge and carrying a gun. He will not be invested with this badge of authority, and he will be prevented from using his position as a shield to facilitate the commission of crimes himself and to cooperate with others in the commission and covering up of crimes.

The record does not disclose that a test has been made of what can be done in the way of securing prompt reports from the Federal bureau of investigation on fingerprints under the challenged ordinance. It may be that some delay will be occasioned because of conditions of today, but it has not been established that reports on fingerprints can not be secured from the Federal bureau of investigation with reasonable promptness.

Our attention has been directed to some cases in which the right of the state and the right of a city to license and regulate private detectives has been considered. Such right has invariably been sustained by the courts. The enactment of police regulations for merchant patrolmen is in principle no different from ordinances regulating the business of private detectives. *Lehon v. Atlanta, supra.*

In *Fox v. Smith,* 108 N. Y. Supp. 181, the right of a state under its police power to require a license and impose regulations upon the business of private detectives was sustained. The court said:

358

"That it is within the police power of the state, and therefore constitutional, I entertain no doubt. The evil results which have in innumerable cases followed upon the employment of so-called 'private detectives' are well known to every judge, to the members of the bar, and to the community generally. Undoubtedly such agencies must often be employed and undoubtedly many of the persons following the calling are honest and honorable, but it is equally unquestionable that many dishonest and dishonorable persons have undertaken to act as private detectives, and have been quite unable or unwilling to resist the temptation to resort to perjury and blackmail. That persons should be forbidden to follow this calling without an inquiry into their character, and the issuance of licenses by the state, is reasonable, and conducive to good order and the welfare of the community. There would seem to be at least as much justification for a statute requiring private detectives to be licensed, as there is for requiring employment bureaus (*People ex rel. Armstrong v. Warden,* 183 N. Y. 223, 76 N. E. 11, 2 L. R. A. [N. S.] 859), or plumbers (*Schnaier v. Navarre Hotel & Imp. Co.,* 182 N. Y. 83, 74 N. E. 561, 70 L. R. A. 722, 108 Am. St. Rep. 790), or persons following other lawful pursuits, to take out licenses as a condition of doing business."

See, also, to the same effect, *Manufacturers' & Merchants' Inspection Bureau v. Buech,* 173 Wis. 433, 181 N. W. 125.

■ The residential requirement for a special policeman made to apply to a merchant patrolman is a valid exercise of the police power of the city, as such patrolman performs police duties and is a quasi-public police officer. A city may require residential and other qualifications from its officers and employees. 2 McQuillin, Municipal Corporations (Rev. 2d ed.), pp. 126-128; *State ex rel. Korns v. Shores,* 48 Utah 76, 157 Pac. 225; *State ex rel. Isham v. Spokane,* 2 Wn. (2d) 392, 98 P. (2d) 306.

Counsel for respondent cite *State ex rel. Richey v.*

*Smith,* 42 Wash. 237, 84 Pac. 851, 5 L. R. A. (N. S.) 674, in which we held that a statute regulating the business of plumbing and requiring plumbers to secure a license from an examining board, was unconstitutional. However, in *Tacoma v. Fox,* 158 Wash. 325, 290 Pac. 1010, we overruled *State ex rel. Richey v. Smith, supra,* and sustained an ordinance which prohibited engaging in the trade of a journeyman plumber without first obtaining a license upon establishing competency before an examining board.

The ordinance challenged by respondent is a valid exercise of the police power of the city of Seattle.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

ROBINSON, C. J., MAIN, STEINERT, and DRIVER, JJ., concur.