State ex rel. George D. Hosford *vs.* John A. Kennedy.

Third Judicial District, Bridgeport, April Term, 1897.　Andrews, C. J., Torrance, Fenn, Baldwin and Hamersley, Js.

The charter of the borough of Naugatuck provides that the warden and burgesses may appoint such number of policemen, not exceeding twenty-five, as they shall see fit, one of whom shall be designated as chief of police, who shall hold their offices until removed or expelled by the warden and burgesses for cause; but that no policeman shall be removed or expelled unless five of the burgesses so vote. In an action of *quo warranto* to determine the respondent's title to the office of chief of police, it was *held* :—

1. That a vote of less than five burgesses to " suspend and remove " the relator from the office of chief of police did not constitute a legal removal.

2. That the relator's title to his office was not affected by the fact that he took his official oath before a notary public, rather than before the warden of the borough who was authorized by the charter to administer the oath of office to all borough officers.

The record of the action taken by the warden and burgesses stated the fact of the relator's removal. *Held* that such record was not conclusive in this action that the required number of burgesses voted for the removal; and that the truth as to the vote might be shown without first causing the record to be amended.

Certain defects and informalties in the pleadings referred to, and the proper course of procedure in cases of *quo warranto* stated.

[Argued April 21st—decided May 25th, 1897.]

Information in the nature of *quo warranto*, brought to

the Superior Court in New Haven County and reserved by that court, *Shumway, J.*, upon a finding of facts, for the consideration and advice of this court.   *Judgment of ouster advised.*

The information alleged that on July 9th, 1895, the relator, duly appointed a policeman by the warden and burgesses of the borough of Naugatuck, was duly designated and appointed chief of police by said warden and burgesses, until he should be legally removed from office; that he duly qualified and entered upon the duties of his office; that on August 7th, 1896, the warden and burgesses, having heard charges presented against the relator, by a vote of less than five burgesses, found the charges proved, and voted to suspend and remove the relator from the office of chief of police, by a vote of less than five burgesses, contrary to the provisions of the borough charter; that the respondent on August 19th, 1896, and from thence hitherto has exercised said office without legal warrant, and during the time aforesaid has usurped and still does usurp the franchises to said office pertaining.

The plea in effect denies that the vote suspending and removing the relator was a vote by less than five burgesses ; and alleges that the relator was by the vote of said warden and burgesses legally suspended and removed from his office as chief of police, and that said warden and burgesses also legally suspended him from duty as a policeman for the period of ten months, without pay ; that afterward the respondent, being a policeman of said borough, was designated by the warden and burgesses as chief of police.

Upon trial the court found that upon the motion of August 7th suspending and removing the relator from office, three burgesses voted in favor thereof and three burgesses in opposition, and thereupon the mayor voted in favor and declared the same carried ; that subsequently, and in like manner, the board suspended the relator as policeman for ten months, without pay ; that thereupon the relator was removed and ousted from his office of chief of police, and the respondent was designated in his place as chief of police ; and thence hitherto has exercised the office of chief of police, and has

ousted the relator from said office and kept him from the discharge of the duties thereof. ·

The reservation presents the question of law involved, as follows: If the action of the warden and burgesses, as above set forth, was ineffectual in law to remove the relator from the office of chief of police, then I find that the respondent, without legal warrant, has used and exercised that office; but if the relator was by said action legally removed, then I find that the respondent has not usurped the office.

*Goodwin Stoddard* and *William D. Bishop, Jr.*, for the relator.

*John O'Neill* and *William Kennedy*, for the respondent.

HAMERSLEY, J. The borough of Naugatuck was established by an Act passed in 1893 (Special Acts of 1893, 190) and amended in 1895 (Special Acts of 1895, 155). The charter (§ 63, clause 35) authorizes the warden and burgesses "to establish and maintain a watch or police for said borough;" and in § 60 specifically prescribes the manner of appointment and removal, the tenure of office, and the powers of the members of the "police" which may be established. The section, as amended in 1895, is as follows: "Sec. 60. The warden and burgesses shall have power and authority, from time to time, to appoint such number of policemen, not exceeding twenty-five, as they shall see fit, one of whom shall be designated as chief of police, who shall take the oath provided by law for constables of towns, and shall hold their offices until removed or expelled by said warden and burgesses for cause, but no policeman shall be removed or expelled by said board unless five of the burgesses vote in favor of doing so, and the action of said board so voting, as aforesaid, shall be final, and no appeal shall be allowed therefrom; and such policemen shall have full power and authority within said borough, to arrest, with or without previous complaint and warrant, all such persons" (stating in detail all powers conferred).

We think this section, in connection with § 63 and other parts of the charter, limits the number of members of the force or department of "police" which the borough is authorized to establish; vests the power of appointment and removal of all members in the warden and burgesses; prescribes the same tenure of office and manner of removal for all members; vests in all members the powers specified; and requires the designation or appointment of a head of the "police" who is a member of the police force and counts as a policeman in determining the number of members that may be appointed, and whose office of "chief of police" embraces all the powers specified in this section as well as those belonging to the head of the force.

These provisions are prescribed by the charter and cannot be altered by any action of the warden and burgesses. When the charter says that the "policemen" (including the one designated as chief of police) shall hold their offices during good behavior, it fixes the tenure of office of the chief of police; and when it says that no policeman shall be removed unless five of the burgesses vote in favor of doing so, it applies as well to the policeman at the head of the department as to the subordinate policemen.

The claim is made that the charter creates no such office as "chief of police," but simply provides for an honorary title coupled with some additional duties and emoluments, which may be given to one or another of the policemen at the pleasure of the warden and burgesses. Such claim cannot be supported by a reasonable construction of the language of § 60, and the charter plainly treats the position of chief of police as a public office in § 18, which provides that "the treasurer, collector, chief of police, and bailiff of said borough shall give sufficient bonds with surety to the warden . . . for the faithful performance of their respective duties before entering upon the performance of the same," in connection with § 63, clause 4, by which the warden and burgesses are authorized to make by-laws "to prescribe the amount of bonds to be given by any officers of said borough who are required to give bonds by this Act." Indeed the existence

of a police department almost necessarily involves a public officer who shall be its head. And so our General Statutes have contemplated the existence, in each municipality possessing a police department, of some official who shall be the head of its police force. *State ex rel. Rylands* v. *Pinkerman,* 63 Conn. 176, 197. Although, as a police department has not heretofore been considered as appropriately belonging to towns and boroughs, such statutes refer in terms only to the chief officer of police in cities.

An alternative claim is made that the charter creates two offices, *i. e.,* that of policeman and that of chief of police; that the relator held both of these offices; that by virtue of his office of policeman he could exercise the powers given by the charter to policemen and was bound to perform the duties imposed upon policemen, and by virtue of his office of chief of police he had none of the powers given by the charter to policemen and was not bound to perform any of the duties of a policeman, but only such duties as may be imposed upon a chief of police; therefore he may be removed from the office of chief of police (not in the manner prescribed for the removal of policemen, but in the manner described in the general provisions of the charter relating to the removal of other borough officers) and still retain and exercise the office of policeman, although he cannot retain the office of chief of police if removed from the office of policeman.

It is clear that a person appointed as one of the policemen under the charter holds an office, and that a person appointed as "chief of police" holds an office. It is also clear that when a policeman is appointed chief of police he has all the powers given by the charter to policemen. He has these powers, however, because they are given to the chief of police by the charter in defining the powers of all members of the force under the description of "policemen." It is not true that he is bound to perform all the duties that may be imposed upon policemen; such obligation is inconsistent with the office of chief of police. If the language of § 60 is submitted to critical analysis independently of all considerations that must affect the construction of a statute, there is an

o

apparent ambiguity and some ground for the respondent's alternative claim; and when this language is considered in connection with other parts of the charter and the evident purpose of the legislature to establish a police force, with a tenure of office unaffected by political changes in the appointing power, the question is still not altogether free from doubt. It seems, however, to us, that the controlling intention of the legislature as expressed by its acts does not give to the chief of police two distinct offices, held by distinct tenures and subject to distinct processes of removal; that the term "policemen," as used in § 60, is intended to apply not so much to naming an office as to defining the appointment, tenure of office, specific powers and removal of all members of the "police" established, including the person appointed to the office of chief of police. All members of the force are called policemen; this is a name adopted as common to all in defining powers common to all. Each member of the force holds an office, because the powers conferred can only be exercised by a public officer; but conferring such powers on the incumbent of an established office does not create another and distinct office. The office held by each patrolman is called "policeman;" it might as well be called "patrolman." It is not the name but the function that controls. The head of the force holds an office whose functions consist of powers given to all policemen, i. e., to all members of the police force, and of some additional powers. His office is created by the charter under a distinct name. Some of his powers are derived from the fact of his being a member of the force described as "policemen;" but it does not follow that these powers, when used by the policeman holding the office of chief of police, must constitute a distinct office. The office held as patrolman is created merely by force of powers given by the charter to all members of the police force. When these powers are used by the member of the force who holds the office of chief of police, they are attached to that office, the necessity which established an office where those powers were exercised by a patrolman, ceases to exist, and the office ceases with the necessity, or is merged in that

of chief of police created and named by the charter. The chief of police cannot be said to hold a distinct office as "policeman," merely because certain of his powers, as well as his tenure of office and method of removal, are prescribed by the charter in prescribing the powers, tenure of office, and method of removal of "policemen," *i. e.*, all members of the force or department of police established in pursuance of the charter.

In reaching this conclusion we have considered the possible effect of the difference between § 60 as enacted in 1893 and amended in 1895, on the true meaning of the Act as amended; but such effect is not of sufficient weight to call for special comment.

It appears that the vote of removal was a vote to "suspend and remove" the relator from the office of chief of police. The power of removal being limited to a specific mode, it cannot be exercised in a different manner under the guise of suspension, even if the warden and burgesses under other provisions of the charter and by-laws made in pursuance thereof may, by a major vote of the board, enforce the penalty of suspension for misconduct. The vote in question was plainly a vote of removal and nothing else.

It also appears that after the vote of removal from the office of chief of police, the board voted to suspend the relator from the office of policeman for ten months. It is not proper to determine in this case whether such vote can be treated as applicable to the relator in his office of chief of police, or whether, if it can be so treated, it was a reasonable and valid exercise of the power of suspension. The respondent justifies only by virtue of a legal removal of the relator from the office of chief of police and a legal appointment of the respondent in his place.

The finding that the oath of office was administered to the relator by a notary public, if it properly appears in the record, does not affect the relator's title to his office. The provision in the charter that the warden may administer the oath of office to all other officers of the borough, cannot operate to defeat his title merely because the oath of office, in

other respects in accordance with the charter, was taken before a notary public.

The claim of the respondent in argument, that upon the trial the record of the warden and burgesses stating the fact of removal, was conclusive, and that it could not be shown that the legal number of burgesses did not concur in the removal, without first causing the record to be amended, is without foundation. One main purpose of a *quo warranto* is to go beyond the record to the very truth of the appointment. The cases cited by the respondent are consistent with this principle.

There is nothing in the respondent's claim that the failure of the relator to file a replication operated as an admission of the respondent's allegation in his plea that the board removed the relator from his office of chief of police; because the general denial in the plea put in issue the allegation in the information that the removal of the relator was by a vote of less than five burgesses, contrary to the provisions of the charter, and because the pleadings are too defective to clearly present the proper issues. An information in the nature of a *quo warranto* must proceed "according to the course of the common law." It is not a civil action within the meaning of the Practice Act in providing "one form of civil action" and prescribing the pleadings. General Statutes, § 905. Illustrations of the proper mode of pleading in *quo warranto* since the passage of the Act are given in the forms adopted by order of court. In the present case the information is demurrable and laid no foundation for bringing the respondent into court. These defects were waived by the respondent when he appeared and voluntarily pleaded to the merits; but the respondent's plea is called an "answer," and is no more a proper plea in substance than in name. When the pleadings do not fully disclose the ground of defense, the issues may be settled by the court. General Statutes, § 880. The parties here went to trial on the issue of fact— was the vote purporting to remove the relator from the office of chief of police passed by the vote of less than five burgesses; and the issue of law—was such removal contrary

to the provisions of the charter? The court has found the fact for the relator, and at the request of both parties reserved the question as to the judgment that should be rendered, for the advice of this court. Under such circumstances, in the absence of sufficient definition of the issues by the pleadings, we may assume that the issues tried by the court were settled by the court before trial; and certainly the parties by going to trial on these issues, and in making the request for the reservation made by the trial court, are now estopped from denying that the issues tried were the issues settled. When the respondent in *quo warranto* pleads in the form of an answer to a complaint, instead of a proper plea to the information, the relator should move to have the pleading expunged; the refusal of a trial court to so order, upon such motion, is error.

Under the circumstances of the present case we do not think the informalties in pleading should prevent the relator from having the judgment to which he is entitled after a trial upon the merits. It would have been better, however, had the trial court compelled the parties to frame their pleadings according to law.

The Superior Court is advised to render judgment of ouster.

In this opinion the other judges concurred.