DOMENIC TREMP *v.* WILLIAM A. PATTEN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued March 6—decided May 17, 1945.

*Charles P. Roraback,* for the appellant (plaintiff).

*Harry Ossen,* for the appellees (defendants).

BROWN, J.   In this action against the defendants as the five members of the board of public safety of the city of Torrington, in which the plaintiff seeks equitable relief against the board's order transferring him from the detective bureau to regular police work in the police department, in alleged violation of his rights under the city charter, the following is a summary of

the material facts in the finding as corrected. The plaintiff became a member of the police force of the city of Torrington on August 31, 1927. At that time, the city charter enacted in 1923 (19 Spec. Laws 462) provided that the police department of the borough of Torrington as then organized should thereafter be the police department of the city and that the patrolmen and officers, including lieutenants and sergeants, of the borough department should continue to hold their respective positions in the city department "subject to the provisions hereof" (§ 90); that "The mayor, with the advice and consent of the board of councilmen, shall have authority to make appointments and promotions of all officers, and to establish a detective bureau, under such rules and regulations as it may adopt for the purpose," and that all such appointees in the police department "shall hold office until removed for cause" (§ 91); and that the board should have authority, after a hearing on written charges, to remove for cause or to reduce in rank any officer in the department (§ 92). On November 9, 1934, pursuant to these provisions, upon recommendation of the mayor the board of councilmen unanimously voted "that a detective bureau be and it is hereby established, within the Police Department and Captain Nicola Calabrese and Sergeant Domenic Tremp are assigned for duty therein." This resolution took effect November 11, 1934. The plaintiff was then a sergeant in the city's police department.

The board of public safety was created by virtue of an amendment to the charter enacted in 1935 (22 Spec. Laws 196) which included among others the provision that "Said board shall have control, management and supervision of the police and fire departments of said city," and "shall have power . . . to appoint all officers, regular and supernumerary; to remove, suspend with-

out pay, discipline and punish and prescribe the duties of, all officers and members . . . of said police and fire departments, and to fix their salaries and compensation; to make all rules and regulations it may deem necessary, consistent with the provisions hereof for the regulation and government of said departments" (§ 3). Section 5 provided that "Said board shall not abolish any office in the police or fire departments, existing at the time of the passage of this act or thereafter created, during the incumbency thereof of any appointee to such office and shall not remove, expel, reduce in rank or suspend without pay any member of . . . the police department except for cause found after hearing on charges made in writing." On August 28, 1939, the board of public safety voted "that Sergeant Domenic Tremp be promoted to Lieutenant at the established Lieutenant's salary."

When the detective bureau was established in 1934 the plaintiff was told by the mayor that the bureau was to do investigating, that he was to assist the captain, and that the work would be done in civilian clothes. He was given a badge inscribed "Detective Sergeant Torrington Police Department." The bureau was provided with a room and equipment wherein cases assigned to it were filed and indexed by the plaintiff, who also did investigation work for the bureau. Upon his promotion to lieutenant, the plaintiff was given a badge inscribed "Detective Lieutenant Torrington Police Department." Both of these badges were presented by the chief of police with the acquiescence of the defendant board, though without express authorization by formal action taken by it. From the time when the detective bureau was established in 1934, the plaintiff had creditably performed active, conscientious and effective work therein, first as sergeant and since 1939 as lieutenant.

On May 2, 1944, the defendant board, although no charges had been preferred against the plaintiff, without according him notice or hearing voted "To transfer Lieut. Domenic Tremp from the Detective Bureau to one of the regular shifts for regular police work as Lieutenant." By the same vote a captain and a sergeant were assigned to the detective bureau, but no lieutenant was so assigned. The work of a detective is of higher plane, grade and dignity than that performed by an officer in uniform drawing the same salary, and the transfer in question deeply injured the plaintiff's pride. The detective bureau is part of the police department, and officers assigned to duty in it retain their respective office and rank in the police department and continue subject to the orders of the chief of police as their superior officer. The plaintiff's office of lieutenant in the police department and his salary remain unaffected by his transfer from duty in the detective bureau. The defendant board, in ordering this transfer, acted solely for the promotion of the efficiency of the police department. The court, overruling the plaintiff's claims to the contrary, concluded that, since no office of "detective lieutenant" ever existed, the plaintiff's rights under § 5 of the 1935 amendment to the charter were not violated by the defendant board's transfer of him to "regular police work as Lieutenant" and rendered judgment for the defendants. The plaintiff has appealed.

The question for determination is whether on May 2, 1944, there existed in the Torrington police department the public office of detective lieutenant. " 'A public office is [the] right, authority and duty, created and conferred by law, by which . . . an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' Mechem on Public

Officers, § 1. . . . Such being the nature of a public office, it is apparent that its source must in this country be found in the sovereign authority speaking through constitution or statute. The creations of the sovereign power cannot, in the absence of a delegated authority, create one. High on Extraordinary Legal Remedies, § 626 . . . ." *State ex rel. Stage* v. *Mackie,* 82 Conn. 398, 401, 74 Atl. 759; 37 Am. Jur. 856, § 226. "The powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority. . . ." 42 Am. Jur. 881. Admittedly, the state had conferred no express authority upon the municipality in this case to create the office of detective lieutenant. The plaintiff claims, however, that the provisions in the charter that the existing borough police department with its personnel be the city's police department with the same personnel, and authorizing the mayor and council "to make appointments and promotions of all officers, and to establish a detective bureau, under such rules and regulations" as they might adopt for the purpose, plus the action taken in creating the detective bureau and transferring the plaintiff to duty in it, were sufficient to constitute his position a public office within the above principles. This contention fails to distinguish between the creation of a new office and the assignment to new duties of one who occupies an office already existing.

The plaintiff as a member of the police force, first as sergeant and subsequently as lieutenant, was a public officer. See *McDermott* v. *New Haven,* 107 Conn. 451, 453, 140 Atl. 826. It was a part of his obligation as such officer to obey the proper orders of his superiors in the police department. The vote of the city council of November 9, 1934, which established a detective bureau "within the Police Department" and

126

provided that the plaintiff was "assigned for duty therein" was such an order. It is evident that the purpose of this vote and of the acts done pursuant to it was not to establish a new agency independent of the police department but rather to afford better facilities within it for the more effective execution of its work. The vote neither purported to establish nor to fill any new office to carry on the work of this bureau. On the contrary, it simply "assigned" the plaintiff and another officer to duty in it. The vote provided for no change of pay or rank and fixed no date for the termination of the duty designated. The vote created no new office, and its effect, in so far as the plaintiff is concerned, was limited to a transfer of him, as an officer, from one kind of duty within the police department to another. Nothing which subsequently transpired calls for a different decision.

Our conclusion is fortified by these further facts: there is no claim that any ordinance making mention of "lieutenant detective" was ever enacted. Although the charter (§ 91) provides for appointments and promotions in the police department, it makes no reference to appointments or promotions in the detective bureau. All of the other officers ordered to serve in that bureau, instead of being appointed to office in it, were, like the plaintiff, merely assigned to duty there.

It is further confirmed by the existing practical necessity of vesting in the police department authorities discretionary power to assign its officers to the respective duties which they are to perform. In the case of *McManus* v. *Newark*, 49 N. J. L. 175, 6 Atl. 882, in which it was held that the change of members of the police force from detectives to patrolmen did not violate a statute forbidding removal except for cause, the court thus aptly referred to this exigency

(p. 176): "As these prosecutors have not been removed, suspended, expelled or discharged from the police force by the commissioners, they are not within the terms of either of these statutes. The regulation of the force by assignment of its members to particular duties, according to the requirements of the service and the special fitness of the individual members for these duties, must certainly be left to the discretion of the board, if they are to have any control or any liberty to act for the promotion of the efficiency of their department. If every change made by them is to be regarded as a degradation or an elevation, and questions of precedence and preference among the members of the police force are to be settled by hearing on evidence and argument, there can be no proper subordination, no selection, or preference for skill or aptitude for special service. The hindrance and restraint on the commissioners would defeat, rather than promote, the efficiency of the police force, which is the main purpose of the law invoked and all other laws on the subject. There is no reason in this objection."

The transfer of the plaintiff from the detective bureau to regular police work as a lieutenant involved no reduction of pay. The fact that he preferred the former assignment, or that work of the latter kind might prove more arduous or be less esteemed in police circles, could not serve to limit the discretion possessed by the defendant board. Neither could the excellent record which the plaintiff had made during his years of faithful service in the detective bureau. See *State ex rel. Rylands* v. *Pinkerman,* 63 Conn. 176, 198, 28 Atl. 110. The plaintiff held the office of police lieutenant. Section 5 of the 1935 Special Act which created the board of public safety fully protected his tenure in that office by forbidding any action adversely

affecting it "except for cause found after hearing on charges made in writing." This section did not have this effect with relation to his service in the detective bureau as such, because there was no office of "detective lieutenant." The court was correct in its conclusion that the defendant board's transfer of the plaintiff to regular police work constituted neither an abolition of office nor a reduction in rank in violation of his rights under § 5 of the act.

The defendants' claim that the Court of Common Pleas was without jurisdiction in this action for equitable relief since the decision of the case would necessarily involve a determination of the plaintiff's right to the office of detective lieutenant requires but brief mention. The principle upon which this claim rests could only have this effect if there was such a lack of the power to hear and determine the case that judgment rendered in it would be not erroneous, but void. As applied to the power of equity to try title to public office, it requires that the court lack jurisdiction over the subject matter of the action. 1 Freeman, Judgments (5th Ed.), § 337. In Connecticut, a single court administers all rights, legal and equitable. General Statutes, § 5436; *Ludington* v. *Merrill*, 81 Conn. 400, 402, 71 Atl. 504; *Cole* v. *Jerman*, 77 Conn. 374, 383, 59 Atl. 425; *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 243, 53 Atl. 57; Yale Law Faculty, "Two Centuries' Growth of American Law," p. 316. Other requirements of jurisdiction being satisfied, the Court of Common Pleas had full jurisdiction to determine the plaintiff's right to office, and the use of an equitable remedy, a common-law remedy, or the special statutory appeal provided would not deprive it of jurisdiction over the subject matter. It might be erroneous for it to grant an equitable remedy, but that would not

destroy its jurisdiction so as to make void its judgment.

There is no error.

In this opinion the other judges concurred.