BOLESLAUS J. MURACH, JR., ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF NEW LONDON ET AL. (12495)

HEALEY, PARSKEY, SHEA, DANNEHY and HAMMER, Js.

Argued January 18—decision released May 7, 1985

*Glenn M. Gordon,* for the appellants (plaintiffs).

*Jane W. Freeman,* for the appellee (defendant Ectrav, Inc.).

*Steven Spellman,* for the appellee (defendant William E. Maloney).

*Myron B. Bell,* for the appellee (named defendant).

ARTHUR H. HEALEY, J. This case is an appeal from a judgment of the trial court upholding a decision of the city of New London planning and zoning commission (hereinafter the commission) to approve a zone reclassification. The questions presented require us to construe portions of General Statutes § 8-19[1] as applied to General Statutes § 8-4a.[2]

The trial court found the following facts. On June 1, 1982, the defendants William E. Maloney and Ectrav, Inc., applied to the commission for a zoning reclassification of a tract of land consisting of approximately five acres located north of interstate route 95 and east of Coleman Street, New London. The defendants' application requested that the commission reclassify a tract[3] from R-1 to C-1.[4] The defendants had proposed the construction of a two-story motel upon the tract.

---

[1] In pertinent part General Statutes § 8-19 provides: "Any municipality may create by ordinance a planning commission, which shall consist of five members, who shall be electors of such municipality holding no salaried municipal office and whose terms of office and method of election or appointment shall be fixed in the ordinance. . . ."

[2] In pertinent part General Statutes § 8-4a provides: "In the establishment of a five-member planning and zoning commission, the provisions of section 8-19 shall apply. In the establishment of a planning and zoning commission with six or more members, the provisions of section 8-19 shall apply except that the terms of office shall be so arranged that not more than three of such terms on a six-member commission, four of such terms on a seven or an eight-member commission, or five of such terms on a nine or ten-member commission shall expire in any one year. . . ."

[3] The application represented that this tract was comprised of 226,947 square feet.

[4] The zoning reclassification thus would be from residential (R-1) to commercial (C-1).

The commission conducted public hearings on July 15 and August 5, 1982, regarding the defendants' application.[5] In addition, a "voting eligibility hearing" was held on August 19, 1982, in order to determine which members of the commission were qualified to vote on the requested zone reclassification. At the September 16, 1982, public voting session, the zone reclassification was unanimous, approved by all seven of its members who voted on the application. Under the commission's procedure, five members must vote in favor of a zone reclassification to approve such a request.[6]

One of the commission's members, Arthur Nunes, was a paid employee of the city of New London's fire department. Nunes had not himself attended either of the two prior public hearings[7] but was present at the September 16 voting session. At that session Nunes and six other commission members were declared eligible to vote on the defendants' application. Upon the commission chairperson's request for a motion on the defendants' application, Nunes moved "that it be accepted under the usual procedure." The trial court specifically found that Nunes had "made no additional statements in an attempt to influence or sway the other members of the commission." Nunes was one of the seven who voted in favor of the reclassification.

The plaintiffs, who are either abutting property owners or owners of property in close proximity to the tract in question,[8] appealed the commission's decision

[5] The plaintiffs have neither challenged in the trial court nor here on appeal the adequacy of notice of the commission's sessions or the fairness of the hearing accorded them.

[6] The planning and zoning commission of the city of New London consists of "seven members who shall be electors" of that city. New London, Connecticut Charter Laws § 160 (1977). See footnote 2, supra.

[7] The plaintiffs made no claim that Nunes had not sufficiently familiarized himself with the proceedings.

[8] The trial court specifically found that "Plaintiffs Murach and Dippolina have standing to pursue this appeal [from the commission's decision] under [General Statutes] § 8-28 as abutting owners."

to the trial court, which found that the reclassification was based on substantial evidence in the record and that it did not constitute spot zoning in violation of the comprehensive plan. The trial court further found that Nunes, as a paid member of the city of New London fire department, fell within the purview of § 8-19 and § 8-4a and thus was an illegally appointed member of the commission. His vote for approval of the zone reclassification was held "to be null and void," but the trial court nevertheless upheld the commission's decision on the ground that it did not violate §§ 8-19 and 8-4a because, under commission rules, Nunes' vote was not necessary to pass the reclassification; there were still six valid votes in favor of the zone change and only five were needed.

On appeal the plaintiffs claim only that the trial court erred in: (1) concluding that a violation of §§ 8-19 and 8-4a results only in the invalidation of the illegally appointed member's vote rather than invalidation of the commission's entire action in approving the zone reclassification; and (2) failing to find that the motion for approval of the zone change, made by an illegally appointed member, was not properly before the commission. In addition to refuting these claims, the defendants contend that the trial court erred in ruling that Nunes was holding a salaried municipal office within the meaning of § 8-19.[9] We find no error.

I

We address first whether Arthur Nunes, a paid member of the New London fire department, was prohibited by statute from membership on that municipality's planning and zoning commission. General Statutes

[9] Only the defendant Maloney briefed the issue whether a paid member of a municipal fire department holds a municipal salaried office within the meaning of General Statutes § 8-19 as an alternate ground to affirm the trial court's judgment. See Practice Book § 3012 (a); Peck v. Jacquemin, 196 Conn. 53, 61 n.13, 491 A.2d 1043 (1985).

§ 8-19 provides in pertinent part that a "municipality may create by ordinance a planning commission, which shall consist of five members, who shall be electors of such municipality *holding no salaried municipal office* . . . ." (Emphasis added.) Under § 8-4a, the provisions of § 8-19 are applicable to planning and zoning commissions. Therefore, individuals holding "salaried municipal office" are expressly precluded by statute from membership on a local planning and zoning commission. The threshold issue in this appeal is thus whether a salaried member of the city of New London fire department holds a "salaried municipal office" within the purview of §§ 8-4a and 8-19.

As a starting point for our analysis, we equate the phrase "municipal office" with "public office." "In construing a statute, common sense must be used . . . . " *Kron* v. *Thelen,* 178 Conn. 189, 192, 423 A.2d 857 (1979). Obviously, one who holds municipal office is a public officer of that municipality. A public office is a position in a governmental system created, or at least recognized, by applicable law to which position "certain permanent duties are assigned, either by the law itself or by regulations adopted under the law by an agency created by it and acting in pursuance of it." 3 McQuillan, The Law of Municipal Corporations (3d Ed. Rev. 1982) § 12.29, p. 149; *Kelly* v. *Bridgeport,* 111 Conn. 667, 670, 151 A. 268 (1930). We have said that a public office "is a trust conferred by public authority for a public purpose, and involving the exercise of the powers and duties of some portion of the sovereign power." (Citations omitted.) *State ex rel. Stage* v. *Mackie,* 82 Conn. 398, 401, 74 A. 759 (1909). As the legislature has not defined the phrase in question here,[10] it is appropriate to examine our decisional law, however sparse, pertinent to the issue.

[10] The legislative history of General Statutes §§ 8-19 and 8-4a sheds no light on the purpose of prohibiting those holding salaried municipal offices from serving on municipal planning and zoning commissions or boards. See

On three occasions this court has addressed, either directly or indirectly, the question whether in a particular context a member of a municipal fire department was a public officer. We have considered the question to be one of fact.[11] A person employed as a "tillerman of a ladder carriage" in the city fire department, under contract conditioned upon "good behavior" at a fixed annual salary, was held to fall within the state constitutional prohibition against the increase in salary of " 'any public officer, employee, agent or servant.' " *Wright* v. *Hartford,* 50 Conn. 546,

2 H. R. Proc., 1947 Sess., pp. 422–32; 8 S. Proc., Pt. 8, 1959 Sess., pp. 4056-57; 8 H. R. Proc., Pt. 11, 1959 Sess., pp. 4508-10; 8 H. R. Proc., Pt. 13, 1959 Sess., pp. 5644-45. At common law, a public officer could not simultaneously hold two incompatible offices. *Stolberg* v. *Caldwell,* 175 Conn. 586, 605, 402 A.2d 763 (1978), appeal dismissed sub nom. *Stolberg* v. *Davidson,* 454 U.S. 958, 102 S. Ct. 496, 70 L. Ed. 2d 374 (1981); 63A Am. Jur. 2d, Public Officers and Employees § 65 (1984). As a general rule, a member of a municipal board or commission holds public office. 63A Am. Jur. 2d, Public Officers and Employees § 21 (1984); see *Keegan* v. *Thompson,* 103 Conn. 418, 420, 130 A. 707 (1925). Accordingly, we ascribe an intent on the part of the legislature to prohibit dual office-holding on the municipal planning and zoning commission. See 3 Anderson, American Law of Zoning (2d Ed. 1977) §§ 17.18, 21.20. We need not, however, ascertain precisely the intent underlying this prohibition. "If the language of the statute is clear, it is assumed that the intention is expressed by the words themselves and therefore there is no need to construe the statute . . . for where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended but what intention it expressed by the words that it used." (Citations omitted.) *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980). Although policy considerations may have changed since the prohibition was enacted, "this court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." *Penfield* v. *Jarvis,* 175 Conn. 463, 474–75, 399 A.2d 1280 (1978). Accordingly, the defendant Maloney's argument as an alternative ground for affirmance; see footnote 9, supra; that statutory provisions imposing disqualifications on holding public office should be strictly construed is of no avail in our resolution of this issue.

[11] As we will develop in this section of the opinion, all the relevant circumstances, including the pertinent statutes, municipal charter provisions and ordinances, are to be considered in making the determination whether a particular municipal position constitutes a "public office." Cf. *State ex rel. Hosford* v. *Kennedy,* 69 Conn. 220, 224, 37 A. 503 (1897).

547 (1883). In *McDonald* v. *New Haven,* 94 Conn. 403, 109 A. 176 (1920), we held that a member of a municipal fire department, regularly appointed under a city charter, was a "governmental officer" and thus was not an "employee" within the meaning of the then existing workers' compensation statute.[12] This "mutually exclusive" rationale articulated in *McDonald,* as well as earlier in both *Sibley* v. *State,* 89 Conn. 682, 685, 96 A. 161 (1915), and *State ex rel. Stage* v. *Mackie,* supra, 401, was undercut in *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 209 A.2d 674 (1965). We stated in *Reidy* that "[a]lthough policemen and firemen may be public officers for certain purposes, they are employees . . ." for municipal civil service purposes. Id., 426.

We have said that "[t]he essential characteristics of a 'public office' are (1) an authority conferred by law, (2) a fixed tenure of office, and (3) the power to exercise some portion of the sovereign functions of government. *Kelly* v. *Bridgeport,* 111 Conn. 667, 671, 151 A. 268 [1930]; Mechem, Public Officers § 1." *Spring* v. *Constantino,* 168 Conn. 563, 568-69, 362 A.2d 871 (1975); *Housing Authority* v. *Dorsey,* 164 Conn. 247, 251, 320 A.2d 820, cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973); see also *Tremp* v. *Patten,* 132 Conn. 120, 124–25, 42 A.2d 834 (1945); 63A Am. Jur. 2d, Public Officers and Employees § 5 (1984). "An individual so invested is a public officer." *Housing Authority* v. *Dorsey,* supra, 251. Under this rule we analyze the question presented.

The General Assembly has empowered Connecticut municipalities to establish local fire departments. General Statutes § 7-301. The city of New London has done so. See New London, Connecticut Charter Laws § 3, and Code of Ordinances § 15-25 (1977). Members of a

---

[12] The narrow holding of *McDonald* v. *New Haven,* 94 Conn. 403, 109 A. 176 (1920), was subsequently overruled by statute. *Lake* v. *Bridgeport,* 102 Conn. 337, 340–41, 128 A. 782 (1925).

municipal fire department "are members of a regularly organized governmental department." *McDonald* v. *New Haven,* supra, 417. The position held by Nunes had been created by ordinance § 15-25,[13] "and, assuming that the [city] council acted within the powers conferred upon it by the city charter, the office was one created by law." *Kelly* v. *Bridgeport,* supra, 671. "Public office embraces the idea of tenure and duration" and this view rests on the continuing and permanent nature of the office; the duration of office need not be for a fixed period to constitute a public office. 63A Am. Jur. 2d, Public Officers and Employees § 6 (1984). In this regard, a member of the New London fire department holds office "during good behavior" and cannot "be removed except for cause by the city manager after hearing." New London, Connecticut Charter Laws § 73a (Code of Ordinances 1977); see also *McDonald* v. *New Haven,* supra, 417. Nor can we say that a member of the New London fire department does not in part or in some fashion exercise the sovereign function. The powers of that municipality are defined to include the following: "[T]o organize, maintain and regulate a fire department, provide the necessary apparatus for extinguishing fires and *do all other things necessary or desirable to protect the city from fire. . . . "* (Emphasis added.) New London, Connecticut Charter Laws § 3 (Powers in general) (Code of Ordinances 1977).

Under these circumstances, a salaried member of the fire department of the city of New London holds a "salaried municipal office" within the meaning of §§ 8-4a

[13] "Article II. Fire Department § 15-25. Organized.

"There shall be in and for the city a fire department consisting of a chief, a deputy chief, such drivers and other employees as the chief, subject to the approval of the city manager, may find necessary, and the members of the following companies of volunteer firemen, viz: F. L. Allen Hook and Ladder Company No. 1, Niagara Engine Company No. 1, W. R. Thomas Hose Company No. 3, C. L. Ockford Hose Company No. 5, Pequot Hose Company No. 6, and Northwest Hose Company No. 7."

and 8-19.[14] In so holding we recognize the continued vitality of the proposition that a municipal position, for certain purposes, may constitute a "public office" and, for others, mere employment.[15] See *State ex rel. Sloane* v. *Reidy,* supra, 426; see also *Markham* v. *Middletown,* 102 Conn. 571, 129 A. 524 (1925).

## II

Having determined that Arthur Nunes was statutorily proscribed from membership on the city of New London's planning and zoning commission, we next consider the claims regarding the legal effect of his participation in the commission's action on the present matter. The trial court determined that, because only five commission members must vote affirmatively in order to effectuate a zoning reclassification in New London and because there were still six valid votes in favor of the change, even if Nunes' invalid vote were

[14] We note that General Statutes § 8-19, enacted in 1947; Public Acts 1947, No. 516, § 2; and the revision of General Statutes § 8-4a that incorporated the § 8-19 requirements; Public Acts 1959, No. 679, § 3; both were enacted at a time when we had already stated, albeit in a different context, that a member of a municipal fire department is a public officer. See *McDonald* v. *New Haven,* 94 Conn. 403, 109 A. 176 (1920). It is presumed that the legislature is mindful of judicial construction relevant to any legislation it enacts. *Peck* v. *Jacquemin,* 196 Conn. 53, 72, 491 A.2d 1043 (1985); *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 395 n.7, 446 A.2d 1059 (1982); *Sawyer Savings Bank* v. *American Trading Co.,* 176 Conn. 185, 189, 405 A.2d 635 (1978); see footnote 10, supra.

[15] The treatment of fire department personnel under our statutes provides an evident example of this principle enunciated in *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 426, 209 A.2d 674 (1965). See General Statutes §§ 7-301 (employees); 7-305 (paid members); 7-306 (employees); 7-308 (employees; fellow-employee); 7-310 (officer or member); 7-313b (officer; officer-in-charge); 7-313c (members); see also General Statutes § 7-314, concerning volunteer fire department personnel (active member; superior or commanding officer). Moreover, under our state Municipal Employee Relations Act, General Statutes §§ 7-467 through 7-477, nonmanagement personnel employed by municipal fire departments may organize and bargain collectively with their employer. General Statutes § 7-467 (2) ("employee" defined); see *Local Union No. 1522* v. *Connecticut State Board of Labor Relations,* 31 Conn. Sup. 15, 319 A.2d 511 (1973).

discounted, the reclassification was valid. The trial court further expressly determined that "although Nunes made the motion for approval of the zone [reclassification], he made no additional statements in an attempt to influence or sway the other members of the commission."

The plaintiffs offer a two-pronged attack on the trial court's ruling. First, the plaintiffs, citing *Low* v. *Madison,* 135 Conn. 1, 60 A.2d 774 (1948), and its progeny, claim that this violation of §§ 8-19 and 8-4a should result in the automatic invalidation of the commission's action in granting this zone reclassification rather than merely the invalidation of the illegally appointed member's vote. Second, the plaintiffs claim that the trial court erred in failing to find that the motion made by Nunes for approval of the zone reclassification was not properly before the commission in that it was made by an illegally appointed member. The defendants present three principal counter-arguments to the plaintiffs' claims of error: First, no express statutory requirement exists requiring invalidation of the commission's entire decision in this matter; second, the plaintiffs' failure to object to Nunes' participation in the commission's decision-making process constituted a waiver of that issue in their zoning appeal; and, third, the legislative intent underlying §§ 8-19 and 8-4a was not frustrated in this case by Nunes' participation. We note initially that we have never previously determined the effect of this specific type of disqualification. See *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 217–18, 348 A.2d 560 (1974).

We have recently reaffirmed the vitality of the principle declared in *Low* v. *Madison,* supra, 8, "that the appearance of impropriety created by a public official's participation in a matter in which he has a *pecuniary* or *personal interest* is alone sufficient to require disqualification." (Emphasis added.) *Gaynor-Stafford*

*Industries, Inc.* v. *Water Pollution Control Authority,* 192 Conn. 638, 649, 474 A.2d 752, cert. denied, 469 U.S.    , 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984). And, of course, our statutes expressly preclude the participation of any member of a municipal planning and zoning commission in "any matter in which he is directly or indirectly interested in a personal or financial sense." General Statutes §§ 8-11 (zoning), 8-21 (planning). We have often stated that the test for disqualification "is not whether personal interest does, in fact, conflict, but whether it reasonably might conflict. *Josephson* v. *Planning Board,* 151 Conn. 489, 493–95, 199 A.2d 690 (1964)." *Thorne* v. *Zoning Commission,* 178 Conn. 198, 205, 423 A.2d 861 (1979); *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority,* supra, 650. In such matters, however, we have not always adhered to a per se rule of invalidation when a member of a board or commission had a conflict of interest that should have counseled disqualification in a matter upon which the member should not have participated. See *Dana-Robin Corporation* v. *Common Council,* supra, 214; *Luery* v. *Zoning Board,* 150 Conn. 136, 146–47, 187 A.2d 247 (1962). We note at this juncture that the trial court neither found, nor do the plaintiffs contend, that Nunes had any personal or financial interest in this particular zoning reclassification.

The statutes at issue, which we hold to have precluded Nunes' membership on the city of New London planning and zoning commission, do not in their language provide any guidance as to what remedy a reviewing court should grant in the event of a post-hoc §§ 8-19 and 8-4a disqualification. The case law on this point is also sparse. In *Board of Commissioners* v. *Thompson,* 216 Ga. 348, 116 S.E.2d 737 (1960), a challenge was made to the commission's approval, by a six to three margin, of a zoning reclassification request. Five affirmative votes were needed to grant the

request, but two of the members voting in favor of the approval were disqualified. One of those disqualified, a judge of the county juvenile court, was prohibited by a statute comparable to § 8-19 from membership on the commission. In holding that the trial court properly held the zoning commission's action void, the court tallied up the remaining valid affirmative votes, four, and noted that "[e]liminating the two illegal votes, the resolution failed to carry by a vote of four to three." Id., 349. Significantly, the court did not hold that the illegal votes per se tainted the entire action. In cases involving municipal councils, generally "where the required majority exists without the vote of a disqualified member, his presence and vote will not invalidate the result." 56 Am. Jur. 2d, Municipal Corporations § 172, p. 225 (1971); see also *Marshall* v. *Ellwood City,* 189 Pa. 348, 354, 41 A. 994 (1899); annot., 43 A.L.R.2d 698, 751, § 27 [b] (1955). We note that the concept of officer de facto has been utilized to give legal effect to public acts done under color of law by persons not officers de jure. See *State* v. *Carroll,* 38 Conn. 449 (1871); *Brown* v. *O'Connell,* 36 Conn. 432 (1870); see also *Sheehan's Case,* 122 Mass. 445 (1877); *Oliver* v. *Mayor of Jersey City,* 63 N.J.L. 634, 44 A. 709 (1899); 63A Am. Jur. 2d, Public Officers and Employees § 578 (1984). The de facto doctrine, which was referred to at oral argument, has relevance to our inquiry because that doctrine is based on policy and the necessity to protect the interests of the public and individuals involved in the official acts of persons exercising the duty of an officer "without actually being one in strict point of law." 63A Am. Jur. 2d, Public Officers and Employees § 578, p. 1080 (1984). We conclude that, in the absence of any legislative direction, in the face of the admission by the plaintiffs that Nunes did not have a personal or financial interest, and with the trial court's express finding of fact that while Nunes made the motion for approval, "he made no additional state-

ments in any attempt to influence or sway the other members of the commission," we cannot say that the trial court's refusal to invalidate the entire action of the commission regarding this zoning reclassification was under the circumstances clearly erroneous. The plaintiffs, whose burden it was in this case to show that Nunes' disqualification tainted the entire proceeding, have failed to show any "interest" on his part, and any such claim of interest, on this record, would have to be bottomed on sheer speculation. Cf. Practice Book § 3060D; *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 234 A.2d 838 (1967); *Josephson* v. *Planning Board,* 151 Conn. 489, 199 A.2d 690 (1964); *Lake Garda Improvement Assn.* v. *Town Plan & Zoning Commission,* 151 Conn. 476, 199 A.2d 162 (1964); *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 191 A.2d 250 (1963); *Lage* v. *Zoning Board of Appeals,* 148 Conn. 597, 172 A.2d 911 (1961); *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493, 134 A.2d 250 (1957); *Low* v. *Madison,* supra. "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The trial court had specifically determined that Nunes' role in this matter was minimal. He had not attended the two prior public hearings on this proposed reclassification. At the commission's voting session of September 16, 1982, as the trial court expressly found, he made no attempt "to influence or sway the other members of the commission." There was no allegation of any personal interest, financial or otherwise, that Nunes might have had in the proposal. He was but one of seven members who unanimously endorsed the zone reclassification.

The plaintiffs essentially argue that the fact that Nunes was the commission member who actually made the motion at the voting session for approval of the defendants' request tainted ab initio the action. A review of the record of that voting session, however, factually belies this claim. The motion made by Nunes was not unsolicited; rather the transcript reveals that the commission chairperson requested "*a* motion" from the commission in order to enable it procedurally to consider the defendants' request. Nunes could have simply and dutifully made the motion to accept the request for reclassification. On this record we cannot say that, even without Nunes' participation, another commission member would not have also made the motion. Our conclusion is strengthened by the unanimity of the commission in approving the defendants' request and by a vote that exceeded that necessary to approve the reclassification.

There is a strong presumption of regularity in the proceedings of a public body such as a municipal planning and zoning commission. *Foran* v. *Zoning Board of Appeals,* 158 Conn. 331, 336, 260 A.2d 609 (1969); *Scovil* v. *Planning & Zoning Commission,* 155 Conn. 12, 19, 230 A.2d 31 (1967); 82 Am. Jur. 2d, Zoning and Planning § 354 (1976); see also *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 356, 362 A.2d 948 (1975); 8A McQuillan, The Law of Municipal Corporations (3d Ed. Rev.) § 25.327. Even if that presumption concerning the proceedings is rebutted, however, "not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown." *Patenaude* v. *Meredith,* 118 N.H. 616, 621, 392 A.2d 582 (1978); see also *Denton* v. *Secretary of the Air Force,* 483 F.2d 21, 28 (9th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S. Ct. 900, 39 L. Ed. 2d 102 (1974); *State* v. *Tedesco,* 175 Conn. 279,

285, 397 A.2d 1352 (1978); *Appeal of Concord Natural Gas Corporation,* 121 N.H. 685, 691, 433 A.2d 1291 (1981).

In the present case the plaintiffs have made no such showing of prejudice. They have not demonstrated that the presence and conduct of Nunes, despite his invalid appointment, in any way affected the ultimate granting of the zoning reclassification. Only five votes were needed for passage of the defendants' zoning reclassification request. Invalidation of Nunes' vote by the trial court resulted in six valid affirmative votes, one in excess of the number required under commission procedure. See 101A C.J.S., Zoning and Land Planning § 189 (1979) (the decision of a planning and zoning commission must "be assented to by the required number of members of the board").

Further, the trial court neither found nor do the plaintiffs contend that Nunes swayed or unduly influenced the commission in this or any other matter. The plaintiffs do not even attempt to argue that but for Nunes the motion to approve this request could never have been made. The plaintiffs therefore have failed to meet their burden of showing *any* prejudice as a result of Nunes' participation in these commission proceedings.

Moreover, no actual conflict of interest existed as a result of his participation in the vote. "It is . . . the rule that where the required majority exists without the vote of the disqualified member, his presence and vote will not invalidate the result and further that a majority vote need not be invalidated where the interest of a member is general or of a minor character." (Citations omitted.) *Anderson* v. *City of Parsons,* 209 Kan. 337, 342, 496 P.2d 1333 (1972); 56 Am. Jur. 2d, Municipal Corporations § 172, p. 225 (1971). The defendants' application involved private parties so that there is no indication on this record that Nunes'

employer had any direct interest in the zoning reclassification at issue. In this case, there was no municipal application, contract or other municipal business pending before the commission. The defendants' request for a zone reclassification had no relation to any municipal business of a public nature other than possibly the general interest of a municipality in having a new employer within its boundaries. On this record, it is apparent that Nunes' participation in this matter, brought before the commission by private parties, did not impair the integrity of the decision-making process. We thus cannot say that "the commission has not acted fairly, with proper motives and upon valid reasons. *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668 [1952]." *DeMars* v. *Zoning Commission,* 142 Conn. 580, 583, 115 A.2d 653 (1955). *Blake* v. *Board of Appeals,* 117 Conn. 527, 533, 169 A. 195 (1933). The trial court properly ruled, therefore, that Nunes' participation did not render the commission's decision invalid.

Because we resolve this issue on the aforestated grounds, we need not decide whether the plaintiffs waived their right to challenge Nunes' participation because of a failure to do so at the time of the voting session. See *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 310–11, 278 A.2d 799 (1971); *Fletcher* v. *Planning & Zoning Commission,* 158 Conn. 497, 507–508, 264 A.2d 566 (1969); *Luery* v. *Zoning Board,* 150 Conn. 136, 146–47, 187 A.2d 247 (1962).

There is no error.

In this opinion the other judges concurred.