This is an appeal from the decision of the Zoning Board of Appeals of the Town of Bristol denying the application of the plaintiffs, S.I.S. Enterprises, Inc., Socrates Diacosavvas and Irene Diacosavvas, for variances of the Bristol Zoning Regulations.
The plaintiffs, S.I.S. Enterprises, Inc. (hereinafter, "S.I.S."), Socrates Diacosavvas and Irene Diacosavvas, are the owners of property located at 97-105 Maple Street, 18 Merriman Street and 150 Federal Street, Bristol, Connecticut. The premises are located on lot numbers 21, 22 and 47 on Bristol Assessor's Map number 23. (Return of Record ("ROR"), Item 1, Application for Variance). Lot 21 is located in a single family residential zone (ROR, Item 1; Item 39, Zoning Regulations, City of Bristol, Connecticut, pp. 31, 27; Item 49, Zoning Regulations, City of Bristol, Connecticut, effective December 21, 1990).
On May 31, 1990, the plaintiffs applied to the Bristol Zoning Board of Appeals (hereinafter "Board"), to obtain variances of: (1) Bristol Zoning Regulation, Art. 3, Sec. 4 to allow access for non-residential parking through a residential zone; (2) Bristol Zoning Regulation, Art. 11, Sec. E3, to allow for fewer than the minimum required number of parking spaces; (3) Bristol Zoning Regulation, Art. 8, Sec. G1, to permit the plaintiffs to reduce the minimum street yard; (4) Bristol Zoning Regulation, Art. 11, Sec. E1(e), to permit front yard parking; and (5) Bristol Zoning Regulation, Art. 10, Sec. A1(f)(2), to permit expansion of a nonconforming building by more than twenty-five percent. (ROR, Item 1).
The plaintiffs' application for variances appeared on the Board's agenda on seven occasions in a seven-month period. On July 10, 1990, the application first went before the Board and the CT Page 5529 matter was postponed at the request of the plaintiffs. (ROR, Item 3, Letter dated July 9, 1991 from plaintiff's attorney to the Zoning Board of Appeals; Item 48, Transcript of Public Hearing of Bristol Zoning Board of Appeals of July 10, 1990, pp. 2-4).
On September 4, 1990, a second meeting was held on the application. (ROR, Item 47, Transcript of Public Hearing of Bristol Zoning Board of Appeals of September 4, 1990). At that meeting a hearing was held and the Board heard testimony from the plaintiffs' attorney, an attorney representing a neighboring landowner, and six other area residents. (ROR, Item 47). Following the disqualification of one of five commissioners present, plaintiffs' attorney requested that the vote on the application be postponed until a fifth member, not present, could review the tape of the hearing. (ROR, Item 47, pp. 35-38). The Board postponed the vote on the application until the October meeting. (ROR, Item 47, p. 39).
At the third meeting, on October 2, 1990, the chairman explained that due to new appointments and additional commissioners disqualifying themselves, there were still only four members able to vote on the application. (ROR, Item 46, Transcript of Public Hearing of Bristol Zoning Board of Appeals of October 2, 1990, p. 2). The Board closed the public hearing on the application and postponed the vote until the November meeting in order to allow the chairman to meet with corporation counsel and the mayor. (ROR, Item 46, pp. 18-21).
At the fourth meeting, held on November 7, 1990, the plaintiffs again requested a postponement until after the Zoning Commission decided on an application for a special permit that was pending. (ROR, Item 45, Transcript of Public Hearing of Bristol Zoning Board of Appeals of November 7, 1990, pp. 3-4; Item 27, Letter dated November 6, 1990 from plaintiffs' attorney to the Bristol Zoning Board of Appeals). The Board granted the postponement. (ROR, Item 45, pp 6-7).
At the next meeting, held on January 2, 1991, the matter was again postponed because the special permit application was still pending before the Zoning Commission. (ROR, Item 44, Transcript of Public Hearing of Bristol Zoning Board of Appeals of January 2, 1991).
On February 4, 1991, at the sixth meeting, the Board again postponed action on the application because one of the eligible commissioners was absent. (ROR, Item 43, Transcript of Public Hearing of Bristol Zoning Board of Appeals of February 4, 1991, p. 6). Because the statutory time limit to make a decision was about to expire, the Board scheduled a special meeting to take place on February 8, 1991. (ROR, Item 43, p. 10). CT Page 5530
At the final meeting, held on February 8, 1991, there were three of four eligible commissioners in attendance, the remaining regular members and alternate members having disqualified themselves. (ROR, Item 42, Transcript of Public Hearing of Bristol Zoning Board of Appeals of February 8, 1991, p. 1). The fourth eligible member, Commissioner Bouvier, had been brought to the hospital the previous evening or that morning. (ROR, Item 42, p. 2). Commissioner Bouvier sent a sealed envelope containing his vote to the Board via a city official. (ROR, Item 42, p. 2-3). The envelope containing Commissioner Bouvier's vote stated that, "If my position on this vote as contained herein is not acceptable to all parties in this matter by common consent, this envelope should be destroyed, unopened, by shredding." (ROR, Item 35, Envelope containing proxy of Bertrand Bouvier).
The three commissioners present at the meeting agreed to use Commissioner Bouvier's vote. (ROR, Item 42, p. 4). Plaintiffs' attorney and an opponent-neighbor's attorney opposed its use. (ROR, Item 42, p. 6).
The vote on the application was taken and all four eligible commissioners, including Commissioner Bouvier, voted against granting the application for variances. (ROR, Item 42, pp. 13-14). On February 12, 1991, the Board caused to be published in the Bristol Press, notice of the decision denying the plaintiffs' application. (ROR, Item 38, Public Notices filed in the Bristol Press). On March 20, 1991, the plaintiffs filed this appeal in the Superior Court.
In order for a party to appeal to the Superior Court, that party must exhaust all administrative remedies. Butzgy v. Glastonbury,203 Conn. 109, 116 (1987). In this case, the plaintiffs properly filed an application for variances with the local Zoning board of appeals. General Statutes 8-6 (3). When the issue was decided by the board, plaintiffs satisfied the exhaustion requirement and acquired the right to appeal to the Superior Court pursuant to General Statutes 8-8 (b).
General Statutes 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the Superior Court . . . ." Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning and Zoning Commission, 219 Conn. 303, 307 (1991). The owner of the property that is the subject of the application is aggrieved and entitled to bring an appeal. Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968).
At a hearing held on February 20, 1992 before this Court CT Page 5531 plaintiff Socrates Diacosavvas testified that lots 21 and 47 are owned by S.I.S. and lot 22 is owned by he and his wife Irene Diacosavvas. He further testified that he is the president of S.I.S. and his wife is the secretary. Based on said testimony, this court made a finding of aggrievement on the record on February 20, 1992.
General Statutes 8-8 (b) further provides that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published." In this case, the decision of the Board was published on February 12, 1991; the papers were served on February 27, 1991 and this appeal was filed on March 20, 1991. Thus, the appeal is timely.
The plaintiffs argue that the Board acted illegally, arbitrarily or contrary to its own regulations and the provisions of the Connecticut General Statutes by accepting a sealed vote from an absent member in deciding on the application for variances. The plaintiffs further argue that because the vote by the absent member was illegal, an insufficient number of votes were cast to deny the application. Plaintiffs finally argue that because the vote was illegal, it was invalid and void, thus the denial of the application was arbitrary, unreasonable and an abuse of the Board's discretion.
"In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it is reasonable arbitrary or illegal." Double I Limited Partnership v. Planning and Zoning Commission, 218 Conn. 65, 72 (1991). A party challenging the action of a zoning board of appeals bears the burden of proving that the commission acted arbitrarily or illegally. Blaker v. Planning Zoning Commission, 212 Conn. 471, 478
(1989).
A variance is "authority granted to the owner to use his property in a manner forbidden by the zoning regulations." Kaeser v. Zoning Board of Appeals, 218 Conn. 438, 445 (1991). The zoning board of appeals is the agency empowered to grant a variance. General Statutes 8-6 (3). "The concurring vote of four members of the zoning board of appeals shall be necessary . . . to vary the application of the zoning by-law, ordinance, rule or regulation." General Statutes 8-7. The zoning board of appeals shall consist of five regular members and three alternate members. General Statutes 8-5 (a).
"There is a strong presumption of regularity in the proceedings of a public body such as a municipal planning and zoning commission. Even if that presumption concerning the proceedings is rebutted, however, `not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown.'" (Citations CT Page 5532 omitted.) Murach v. Planning Zoning Commission, 196 Conn. 192,205 (1985).
In this case, neither the plaintiffs nor the Board have cited any authority as to whether an absent board member who was present for the public hearing may vote by way of a sealed ballot. Likewise, this Court's research has revealed no such authority. Assuming arguendo, that plaintiffs are correct, and use of the sealed ballot was improper, such procedural irregularity is reversible only upon a showing of prejudice. Murach, supra at 205-206. The plaintiffs have made no such showing of prejudice. They have not demonstrated that the use of the absent commissioner's vote, even if invalid, in any way affected the ultimate denial of the variances sought.
As noted, to vary the application of the zoning by-law, ordinance, rule or regulation, General Statutes 8-7 requires the concurring vote of four members of the zoning board of appeals. (Emphasis added.) A denial is a decision not to vary. Even if there were five commission members present and eligible to vote, as soon as two members voted against it, it then became impossible for the plaintiffs to garner the four votes necessary to grant their application for variances as required by General Statutes 8-7. Further, the plaintiffs do not contend that the sealed vote swayed or unduly influenced the Board. To the contrary, before the sealed vote of the absent commissioner was opened and read, two attending commissioners had already cast their negative statute votes, and the third present commissioner had stated his intention to vote against the application, as well. (ROR, Item 42, Tr., pp. 8-14). The plaintiffs therefore have failed to meet their burden of showing any prejudice as a result of the use of the absent commissioner's vote.
The plaintiffs next contend that a quorum of the Board was not assembled at the February 8, 1991 meeting when the plaintiffs' application was voted upon and denied. General Statutes 8-5,8-5a and 8-11 establish that five members of a zoning board of appeals shall constitute a full board, whether made up of regular or alternate members. In Strain v. Mims, 123 Conn. 275, 281
(1937), our Supreme Court said: "In the absence of legislative restriction, the general rule is that a . . . commission performing functions as those exercised by the zoning commission . . . can take valid action at a meeting at which all members have proper notice and at which a majority is present." A majority of the members constitute a quorum. St. John's R.C. Church v. Board of Adjustment or Appeals, 125 Conn. 714, 720 (1939). On February 8, 1991, three of five members of the Board were present, indicating a majority, thus a quorum.
Plaintiffs' complain finally that the City of Bristol failed to adopt an ordinance pursuant to General Statutes 8-11. Said CT Page 5533 allows a municipality to provide a method to select an elector to replace a disqualified board member when there are no alternates available. Section 8-11 does not require towns to adopt such an ordinance, however. Rather, it allows for such a procedure at the municipality's option. The fact that the City of Bristol has subsequently adopted an ordinance pursuant to General Statutes 8-11 does not render the Board's February 8, 1991 action illegal or void. The enactment of Bristol Code of Ordinance 18-2, authorized by General Statutes 8-11, was discretionary with the Town and not mandated by the State.
Accordingly, the plaintiffs' appeal is dismissed.