[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This memorandum concerns three appeals brought by the plaintiff Robert Hanson in response to decisions made by Winchester town agencies. Each of these decisions relates to a plan by the plaintiff to build 34 townhouses on a 4.45 acre CT Page 1467 parcel on the west side of West Wakefield Boulevard in Winchester, Connecticut. In two separate cases, the plaintiff appeals from the Winchester Planning and Zoning Commission's (hereinafter the PZC) denial of an application for a special permit and the PZC's denial of an application for a zone change. In the third case, the plaintiff appeals from the Winchester Inland Wetlands Commission's (hereinafter the IWC) denial of an application to relocate and improve a man-made seasonal drainage ditch. Each of these matters will be addressed separately.
Inland Wetlands Appeal
The plaintiff appeals from a decision of the IWC denying his application to relocate and improve a man-made seasonal drainage ditch and improve a storm drainage system and soil erosion and sedimentation plan. The plaintiff made his application to the IWC on November 19, 1988. A public hearing on this matter commenced on December 21, 1988 and was closed on January 18, 1989. On February 15, 1989 the IWC voted to deny the plaintiff's application. Return #3. Six members voted to deny the application while one abstained. Return #3.
The IWC acted under the authority granted to it by Connecticut General Statutes Sec. 22a-42. The plaintiff appeals under the authority of Connecticut General Statutes Sec.22a-43. The plaintiff is an owner of the property and is therefore an aggrieved party. Bossert Corporation v. Norwalk,157 Conn. 279, 285 (1968). On appeal from an order or decision of an IWC, a court does not try a case de novo. East Haven Economic Development Commission v. D.E.P., 36 Conn. Sup. 1,5 (1979). The court's function is to examine the record to determine if the ultimate findings of fact are supported by substantial evidence. Id. at 5.
The plaintiff raises two issues in his appeal from the decision of the IWC. The plaintiff first asserts that the IWC's reasons for denying his application were so vague that the commission's failure to give him guidance concerning the information it sought constituted a taking. The application was denied for several reasons. The commission cited a lack of necessary information and a concern over the environmental impact of the project. Return #57, 59.
While the commission's reasons for denial may have been inarticulately stated, a review of the transcript sheds substantial light on the reasons for denial. It should be noted that such a review of the record is permissible when the commission's stated reasons are inadequate. CT Page 1468 See Stankiewicz v. Zoning Board of Appeals, 211 Conn. 76,77-78 (1989). The IWC appeared to deny the application since there exists a high risk of "significant damage to the lake because the wetlands are being moved and because of the project itself" and because the commission was "not happy with (the developer's) sedimentation control." Return #3 at 4, 5. The commissioners also criticized the proposal as a project that would create "an irreversible. . .environmental impact on invaluable wetlands." Return #3 at 7. This statement was based on a reading of an environmental impact study conducted by Robert Kortman of Ecosystem Consulting Service, Inc. Return #3 at 7, See also Return #34b.
Therefore, when the transcript of the proceedings leading to denial and the stated reasons for denial are read in combination, the commission's reasons for denial are completely understandable. Moreover, even if these reasons were unclear, a taking would not have occurred. A court cannot reach the conclusion that an unconstitutional taking has occurred merely because there has been a decrease in the total value of the property. Manor Development Corporation v. Conservation Commission, 180 Conn. 692, 695 (1980). A property may be subject to reasonable restraints without resulting in a taking Id. at 695-96. A taking is not present in this case because the property already has seven dwelling units consisting of three single family dwellings, two seasonal cottages and two two-family dwellings. Return #49 at 9.
The plaintiff next argues that his appeal should be sustained because the chairman of the IWC was predisposed toward the denial of the application. The issue of predisposition involves a question of fact and the burden of proving the illegality is on the plaintiff. Cioffoletti v. Planning and Zoning Commission, 209 Conn. 544, 555 (1989). The plaintiff claims that the chairman's predisposition on the matter stems from an alleged bet that he made with a luncheonette proprietor on the eventual outcome of the application. However, testimony reveals that no genuine wager was ever made on the application. For instance, no money changed hands and these so-called bets were made by the two individuals on every topic that was ever discussed. Additionally, the restaurant proprietor would always initiate the bet while Mr. Cappobianco, the IWC chairman, would simply take a position contrary to that of the restauranteur. When analyzing the issue of predisposition "courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism." Anderson v. Zoning Commission, 157 Conn. 285, 291 (1968). Careful scrutiny of the circumstances present in this case reveal that the two individuals involved were merely joking with one another and CT Page 1469 that there exists no evidence of corruption or favoritism that can be said to have resulted from the placing of the so-called bet. The court is compelled to observe, however, that citizens who volunteer their services for commissions which decide such highly-charged emotional issues, such as those contained in the instant appeal, must guard against frivolous statements which might be construed against their ability to fairly decide discretionary matters. The fact that this repartee, or so-called bet, occurred in a hub of early-morning activity for the town, compounds the shadow for a defensive applicant such as this plaintiff, who was well aware of the public sentiment against him.
Moreover, even if the chairman were to be disqualified, the decision of the commission would remain in effect. See Murach v. Planning and Zoning Commission, 196 Conn. 192, 206 (1985). It is Connecticut law that "where the required majority exists without the vote of the disqualified member, his presence will not invalidate the result and further that a majority vote need not be invalidated where the interest of a member is general or of a minor character." Id. at 206. Since the vote of the IWC would have been 5-0 favoring denial if the chairman were disqualified, the alleged impropriety of the chairman is not a sufficient basis for reversal of the IWC's decision. See Id. at 206.
Appeal of Zone Change Application
This case is an appeal from the Winchester Planning and Zoning Commission's denial of the plaintiff Robert Hanson's application for a zone change. A public hearing on the zone change application was held on January 9, 1989 and concluded on January 23, 1989. On February 27, 1989 the application for a zone change was denied. The Winchester PZC in denying the application for a zone change acted under the authority of Connecticut General Statutes Sec. 8-8. The plaintiff appeals under the authority of General Statutes Sec. 8-9.
As an owner of the property the plaintiff is an aggrieved party. Bossert Corp., 157 Conn. at 285. A reviewing court's discretion in examining a zoning body's actions in ruling upon a zone change is very limited. Pleasant Valley Neighborhood Assn v. Planning and Zoning Commission,15 Conn. App. 110, 113 (1988). A reviewing court should only determine whether the assigned grounds of a decision are reasonably supported by the record and whether such grounds are pertinent considerations under the zoning regulations. Id. at 113. The burden is on the one appealing from the denial of a zone change application to prove that the action of the commission amounted to an illegal abuse of power. DeForest Hotchkiss Co. v. Planning and Zoning CT Page 1470 Commission, 152 Conn. 262, 267 (1964).
In denying the plaintiff's request that his property be changed from an R-2 to an R-4 zone the PZC cited three reasons. The commission stated that an R-4 zone is much too dense for the ecology of the lake area, the zone change would constitute spot zoning, and the density would be inconsistent with the like area.
The record discloses that the areas surrounding the proposed project have varying densities of between 5.5 and 7.4 units per acre. Tr. January 9, 1989 at 80-83. The density of the project proposed by the plaintiff is 7.64 units per acre. This figure is one demonstrating greater density than any other site in the area. Tr. January 9, 1989 at 82. An important consideration to be considered on a petition for a zone change is the good of the community as a whole rather than the benefit to a particular individual or group of individuals. Ferndale Dairy, Inc. v. Zoning Commission, 148 Conn. 172, 175 (1961). A desire to avoid increasing the density in an already crowded locale is a legitimate community concern. Additionally, the determination of what the public interest requires is within the discretion of the commission. Id. at 175. Thus, the commission's concern over density provided a proper justification for denial of the zone change.
The PZC also refused to approve a zone change by reasoning that such a change would constitute spot zoning. Spot zoning has been defined as "action by a zoning authority which gives to a single lot or a small area privileges which are not extended to other land in the vicinity is in general against sound public policy and obnoxious to the law." Levinsky v. Zoning Commission, 144 Conn. 117, 125 (1956). While much of the property in the area of the plaintiff's property is in an R-4 zone, spot zoning would still exist if the plaintiff's property were to be rezoned as R-4. See Miller v. Planning Commission, 142 Conn. 265, 270 (1965). The extension of an already existing zone can be said to constitute spot zoning. Id. at 265. The ultimate test to determine spot zoning is "whether, upon the facts and circumstances before the zoning authority, the extension is, primarily, an orderly development of an existing district which serves a public need in a reasonable way or whether it is an attempt to accommodate an individual property owner." Wade v. Plan and Zoning Commission, 145 Conn. 592, 596
(1958). Since no pressing public need existed to justify a zone change and such a change would primarily serve only to benefit the property owner, the commission acted properly in denying the zone change as impermissible spot CT Page 1471 zoning.
Special Permit Appeal
This case is an appeal from the PZC's denial of the plaintiff's application for a special permit to construct 34 townhouses on the aforementioned 4.45 acres located near Highland lake. A public hearing on the special permit application was held simultaneously with the public hearing on the previously discussed zone change application. Similarly, the special permit application was denied at the same February 27, 1989 PZC meeting which also considered and rejected the proposed zone change.
In denying the special exception the PZC acted under the authority granted to it by Connecticut General Statutes Sec. 8-2. As noted earlier, the plaintiff as the owner of the property is an aggrieved party who appeals pursuant to General Statutes Sec. 8-9. The action of a zoning board in denying a special exception is subject to review by the courts only to determine if such action was arbitrary, unreasonable or illegal, Molic v. Zoning Board of Appeals,18 Conn. App. 159, 165 (1989). A zoning board, however, has no discretion to deny a special exception if the regulations and statutes are satisfied. Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 56 (1988).
The PZC put forth several reasons for its denial of the special exception. The reasons for denial were as follows:
1. The project is not in character with the area and neighborhood; 2. The commission rejected a traffic study done of the area and concluded from personal experiences and observation that the project would cause an increase in traffic volume and would pose a safety hazard; 3. The parking lot for more than twenty cars contained only one driveway; 4. The unit density of the proposed special permit exceeded that of the underlying zone; 5. Information on use of the lakeside land with regard to boats and other activities was not furnished.
While the plaintiff disputes the validity of each of these reasons, an analysis of each reason stated by the PZC demonstrates that all of the commission's concerns are well-supported by both the record and the law. The PZC concluded that the granting of a special exception and the resultant 34 unit development would increase traffic volume and create a safety hazard. In reaching this conclusion the commission rejected the traffic study of the plaintiff's witness. Such a rejection was justified because the expert who performed CT Page 1472 the study did not observe summer traffic and appeared unfamiliar with traffic in lakeside communities. Tr. January 9, 1989 at 60, 76. Further, the hypothetical assumptions of summer traffic contained in the study were repudiated by the commission members who substituted their own knowledge and personal observations of traffic in the area when deciding whether a safety hazard was present. Members of a commission may properly consider any facts relating to traffic which have been learned through personal observation. Forest Construction Co. v. Planning and Zoning Commission, 155 Conn. 669, 675
(1967). A commission must consider public safety when evaluating an application for a special exception. Conn. Gen. Stat. Sec. 8-2; Anastasi v. Zoning Commission, 163 Conn. 187,190 (1972). In ruling upon the application for a special exception the PZC properly considered public safety and reasonably concluded that the application should be denied in order to prevent the creation of a safety hazard.
The commission also refused to grant the special exception contending that the unit density of the proposal would exceed the density of the underlying zone. This statement is plainly accurate as the proposed density of the special exception is 7.64 units per acre and the surrounding densities range from 5.5 to 7.4 units per acre. Tr. January 9, 1989 at 80-83.
The PZC stated that the project was not in character with the area or the neighborhood in violation of Sec. 4.1.15a of the Winchester zoning regulations. It is necessary that a zoning authority consider property values when deciding what action to take on an application for a special exception. Conn. Gen. Stat. Sec. 8-2, Anastasi, 163 Conn. at 190. There was testimony at the public hearing that the proposal advanced by the plaintiff would decrease property values in the vicinity of the lake by approximately five percent. Tr. January 9, 1989 at 130. Based on this testimony it was proper for the PZC to conclude that the project for which the special exception was sought was out of character with the area and the neighborhood.
The PZC also denied plaintiff's application because it provided for a parking lot of more than twenty spaces while failing to show more than one driveway. Section 4.4.6e of the Winchester zoning regulations mandate that a parking lot with more than twenty spaces shall have two driveways with access to a public street. In order to be granted, a special exception application should comply with the zoning regulations of the municipality. Anastasi, 163 Conn. at 190. Since the applicant did not provide the number of driveways required by the regulations, it was reasonable for the PZC to deny the application on this basis. CT Page 1473
The last reason cited by the commission in its denial of the plaintiff's application concerned the applicant's refusal to furnish information with regard to the use of the lakeside land as such land related to the potential for boating (i.e. docks) and other activity. The plaintiff steadfastly refused to answer questions about the use of boats and the relationship such usage would have to the lakeside strip of land. Tr. January 9, 1989 at 159-160. Individuals speaking at the public hearing voiced a significant concern that such boating activity would pose a safety hazard. Tr. January 9, 1989 at 166-168. As stated previously, it is necessary to consider the public health and safety when ruling upon an application for a special exception. Conn. Gen. Stat. Sec. 8-2. Therefore, the commission acted appropriately when it declined to grant the special exception because it lacked information bearing upon the issue of public safety.
The final issue in this administrative appeal relates to both the proposed zone change and the application for a special exception and concerns the alleged bias and conflict of interest of PZC member David Carter. The appellant contends that David Carter's connection with the Highland Lake Association should have disqualified Carter from voting on the aforementioned matters. The Court agrees. While Carter's participation may have been improper, it is not sufficient to invalidate the actions of the commission. The motion to deny the zone change passed unanimously and the motion to deny the special exception passed by a margin of four to one. Where the required majority exists without the vote of the disqualified member, his presence and vote will not invalidate the result. Murach, 196 Conn. at 206.
Since a majority existed to deny both applications without the vote of David Carter, his participation is not sufficient to nullify the decisions of the commission.
For the reasons stated, the appeals in each of the above-captioned cases are hereby ordered dismissed.
DRANGINIS, J.